Blake D. Miller (4090)
James W. Anderson (9829)
Miller Guymon, P.C.
165 Regent Street
Salt Lake City, Utah 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
E-mail: miller@millerguymon.com
           anderson@millerguymon.com

Attorneys for Debtor and Debtor in Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | **Bankruptcy Case No. 10-27816** |
| | **Chapter 11** |
| **WOLF CREEK PROPERTIES, LC** | |
| | **Honorable Joel T. Marker** |
| **Debtor.** | |
| | **(Filed Electronically)** |

## DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION, DATED OCTOBER 7, 2010

Dated:  October 7, 2010.

1

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...........................................................................................2

I.   INTRODUCTION ...........................................................................................8

    A.   Summary of the Debtor's Plan of Reorganization ............................... 8

    B.   Purpose, Limitations and Structure of this Disclosure Statement ........8

    C.   Voting on the Plan ....................................................................... 11

        1.   Voting Classes and Presumes Acceptance ................................ 12

        2.   One Vote Per Holder ............................................................. 12

        3.   Procedures and Deadlines for Completing Ballots and Voting ........ 12

        4.   Procedures for Vote Tabulation .............................................. 13

        5.   Record Date ....................................................................... 14

        6.   Confirmation Hearing – Rules Governing Objections to
           Confirmation ...................................................................... 14

II.  GENERAL INFORMATION ABOUT THE DEBTOR ...............................15

    A.   The Resort ................................................................................ 15

    B.   Background of the Debtor ...........................................................16

    C.   Ownership Subsidiaries .............................................................. 18

        1.   Ownership Structure ............................................................ 18

        2.   Subsidiaries ....................................................................... 18

        3.   Management ....................................................................... 19

    D.   Pre-Petition Secured Debt .......................................................... 19

1.   American First Credit Union ............................................. 20

2.   Farm Bureau Life Insurance Company Michigan..................... 20

3.   Zions First National Bank ..............................................20

4.   Secured Claim of Capon Capital ..................................... 20

5.   Wolf Creek First Mortgage, LP ...................................... 20

6.   McFarlane Family Trust .............................................. 20

7.   Randy Marriott Construction ......................................... 20

E.   Events Leading to Commencement of Chapter 11 Cases ...................21

III.   THE DEBTORS' CHAPTER 11 CASE.........................................21

A.   Filing .......................................................... 21

B.   Events During the Case ........................................21

1.   Employee Pre-Petition Wage Claims ......................... 23

2.   Retention of Debtors' Professionals ......................... 23

3.   Unsecured Creditors Committee ............................. 23

C.   Schedules, Bar Date and Summary of Claims ................... 24

1.   Schedules and Statements................................. 24

2.   Bar Date.............................................. 24

3.   Summary of Claims ..................................... 24

IV.   THE PLAN ...........................................................25

A.   Purpose of Plan .......................................... 25

B.   Classification and Treatment of Claims and Interests ........................26

C.   Plan Overview. ........................................... 26

1.    Unclassified Claims ....................................................................... 27

    a.    Administrative Expense Claims ....................................... 27

    b.    DIP Claims ....................................................................... 27

    c.    United States Trustee Quarterly Fees and Other Statutory Fees ........ 28

2.    Classified Claims Against and Interests in the Debtor ............................. 28

D.    Plan Implementations. ........................................................................ 41

1.    General .......................................................................................... 41

2.    Vesting of Assets; Release of Liens ........................................... 41

3.    Preservation of Causes of Action .............................................. 42

4.    Hiring of Employees; Retention of Professionals ..................... 42

5.    Compromise and Settlement ...................................................... 42

6.    Terms of Injunctions or Stays ................................................... 43

7.    Continuation of Business and Efforts to Obtain Funding .......... 43

8.    Structured Liquidation and Wind-down Alternative ................. 44

E.    Distributions ....................................................................................... 45

1.    Means of Cash Distributions ...................................................... 46

2.    No Distributions Pending Allowance ......................................... 46

3.    Distributions after Allowance .................................................... 46

4.    Setoff Rights ................................................................................ 46

5.    Unclaimed Distribtuions ............................................................. 47

6.    Minimum Cash Distributions ...................................................... 47

F.   Claims ............................................................................................... 48

   1.   Claims Administration.................................................................. 48

   2.   Estimation of Disputed Claims .................................................... 48

   3.   Interest on Claims........................................................................ 49

   4.   Voting and Objections.................................................................. 49

G.   Executory Contracts. .......................................................................... 49

   1.   Rejection of Contracts and Leases .............................................. 49

   2.   Bar to Rejection Damages ........................................................... 50

   3.   Assumption of Specific Contracts and Leases............................. 50

   4.   Insurance Policies........................................................................ 50

   5.   Cure of Defaults .......................................................................... 51

   6.   Modification and Amendments..................................................... 51

   7.   Revocation, Withdrawal or Non-Consummation.......................... 52

H.   Confirmation. ...................................................................................... 52

   1.   Voting Procedures and Solication of Votes.................................. 52

   2.   Confirmation ................................................................................ 52

      a.   Acceptance ........................................................................ 54

      b.   Feasibility.......................................................................... 54

      c.   Best Intersts Test............................................................... 55

      d.   Cramdown .......................................................................... 55

         i.   Secured Creditors.................................................... 56

         ii.   Unsecured Creditors ............................................... 56

iii. Interests ................................................................... 56

3. Conditions to Confirmation ....................................... 57

4. Conditions to Effective Date....................................57

5. Waiver of Conditions ............................................... 58

6. Effect of Failure of Conditions ................................. 58

I. Federal Incme Tax Consequences. ...................................... 58

1. Consequences to Interest Holders ............................. 60

a. Limited liability companies............................ 60

b. Cancellation of Indebtedness Income ............. 61

2. Consequences to Holders of Secured Claims ........... 62

a. Holders of Allowed Class 13 General Unsecured Claims ................. 62

b. Holders of Interests....................................... 63

3. Accrued but Unpaid Interest .................................... 63

4. Information Reporting and Withholding ................... 64

J. Risk Factors ...................................................................... 65

1. Certain Bankruptcy Considerations ......................... 65

2. Material United Stated Federal Income Tax Considerations...................... 66

K. Alternatives to Plan ........................................................... 66

1. Liquidation Under Chapter 7 ................................... 66

2. Alternative Chapter 11 Plan..................................... 67

V. CONCLUSIONS AND RECOMMENDATION ...........................................67

This disclosure statement (the "Disclosure Statement") is being distributed for purposes of soliciting acceptances of the Debtor's Chapter 11 Plan of Reorganization, dated October 7, 2010 (the "Plan"). The information in this Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan. No solicitation of votes to accept the Plan may be made except pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code").

All creditors are advised and encouraged to read this entire Disclosure Statement and the Plan before voting to accept or reject the Plan. A copy of the Plan is attached as Exhibit "A." Plan summaries and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan and this Disclosure Statement. The statements contained in this Disclosure Statement are made only as of the date hereof. There is no assurance that the statements contained in this Disclosure Statement will be correct at any later date. In the event of any conflict between this Disclosure Statement and the terms of the Plan, the terms of the Plan will govern.

This Disclosure Statement has been prepared in accordance with section 1125 of the Bankruptcy Code and rule 3016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and not necessarily in accordance with Federal or State securities laws or other non-bankruptcy law.

As to contested matters, adversary proceedings and other actions, threatened actions or disputes, this Disclosure Statement will not constitute or be construed as an admission of any fact or liability, or as a stipulation or waiver, but rather as a statement made in settlement negotiations. This Disclosure Statement will not be admissible in any bankruptcy or non-bankruptcy proceeding involving the Debtor or any other party (other than in connection with

approval of this Disclosure Statement or confirmation of the Plan), nor will it be construed to be conclusive advice on the tax or other legal effects of the Plan as to holders of Claims against, or Interests in, the Debtor.

## I.   INTRODUCTION

### A.   Summary of the Debtor's Plan of Reorganization

Wolf Creek Properties, LC, as debtor and debtor in possession, ("Debtor"), submits this Disclosure Statement for use in the solicitation of votes to accept or reject the Debtor's Plan of Reorganization, dated October 6, 2010 (the "Plan"). Capitalized terms used but not defined herein shall have the meanings given to them in the Plan.

Generally, the Plan provides for the continuation of the Debtor's efforts to obtain funding or equity investment necessary to preserve the value of the Resort as a whole. Should such a Funding Event timely occur, creditors will be paid out of the Funding Event and the operations of the Resort. Should these funding efforts not be successful by 12 months from the Effective Date of the Plan, a structured liquidation of the Debtor's assets will be performed. Creditors and Interest holders would then be paid from the proceeds of such liquidation sales.

### B.   Purpose, Limitations and Structure of this Disclosure Statement

This Disclosure Statement is intended to provide such information as may be material, important and necessary for a reasonable investor typical of the holders of Impaired Claims to make an informed decision whether to vote in favor of or against the Plan. Only the holders of Allowed Claims or Interests of a Class that is Impaired under the Plan are entitled to vote on the Plan.

This Disclosure Statement sets forth certain information concerning the Debtor's prepetition operations and financial history, the reason for filing the Chapter 11 petition,

significant events that occurred during the Chapter 11 Cases, and the Debtor's Assets and Liabilities.

This Disclosure Statement also summarizes the terms and provisions of the Plan, including certain alternatives to the Plan, certain effects of confirmation of the Plan, and the manner in which distributions will be made under the Plan.  In addition, this Disclosure Statement discusses the confirmation process and procedures that holders of Claims who were entitled to vote on the Plan must follow for their votes to be counted.

This Disclosure Statement contains a summary of certain provisions of the Plan and certain other documents and financial information. While it is believed that the summaries are fair and accurate and provide adequate information with respect to the documents summarized, each such summary is qualified to the extent that it does not set forth the entire text of such documents, which are controlling, in the event of any inconsistency. While reasonable efforts have been made to be accurate, there can be no representation or assurance that the information contained herein is complete and without error.   The Disclosure Statement, however, is not the Plan.  In the event of any inconsistency between the Disclosure Statement and the Plan, the Plan will control.  Each holder of a Claim is urged to review the Plan and the exhibits to this Disclosure Statement in their entirety before casting a ballot.

For a description of the Plan and certain risks and other factors pertaining to the Plan as it relates to holders of Claims and Interests, see "Summary of the Plan" and "Risk Factors" below.

The Bankruptcy Court has not passed on the merits of the Plan and has not conducted a detailed investigation into the contents of this Disclosure Statement.  The Bankruptcy Court's approval of this Disclosure Statement does not constitute either a guarantee of the accuracy or completeness of the information contained herein or an endorsement of the Plan by the

Bankruptcy Court.

Neither the Plan nor the Disclosure Statement have been approved or disapproved by the Securities and Exchange Commission, nor has the Securities and Exchange Commission passed upon the fairness or merits of the information contained herein.   Any representation to the contrary is unlawful.

No representations concerning the Debtor, its business operations, the value of its property, or the value of benefits offered to creditors or other parties in interest in connection with the Plan are authorized other than as set forth in this Disclosure Statement.  You should not rely on any representations or inducements made to secure your acceptance or rejection of the Plan which are contrary to the information contained in this Disclosure Statement.

You are not to construe the contents of this Disclosure Statement as legal, tax or accounting advice but should consult your counsel, accountant and business advisors as to legal, tax and accounting matters concerning the Plan.

The Debtor has prepared the information contained in this Disclosure Statement in good faith, based upon the information available to it.  No audit of the financial information contained in this Disclosure Statement has been conducted.  Moreover, certain of the statements contained in this Disclosure Statement, by their nature, are forward-looking and contain estimates, assumptions and projections, and there can be no assurance that these forward- looking statements will turn out to be true.

On November ___, 2010, after notice and a hearing, the Bankruptcy Court issued an order (the "Disclosure Statement Order") approving this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable a hypothetical, reasonable investor typical of the Debtor's Creditors to make an informed judgment whether to accept or reject the Plan.

Approval of this disclosure statement does not constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan.

### C.       Voting on the Plan

Pursuant to the Bankruptcy Code, only Classes of Allowed Claims or Interests that are Impaired under the Plan are entitled to vote to accept or reject the Plan.  Classes of Claims that are not Impaired are not entitled to vote and are deemed to have accepted the Plan.  Similarly, Classes of Claims that are not Allowed are not entitled to vote to accept or reject the Plan. Voting on the Plan shall be pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules, and a Class shall have accepted the Plan if the Plan is accepted by at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class actually voting.

Only holders of Allowed Claims and Allowed Interests shall be entitled to vote on the Plan.  A Claim to which an objection has been filed is a Disputed Claim, not an Allowed Claim, unless and until the Bankruptcy Court rules on the objection and has Allowed the Claim. Therefore, although holders of Claims and Interests subject to a pending objection will receive ballots, their votes will not be counted unless the Bankruptcy Court, prior to the Confirmation Hearing, rules on the objection and allows the Claim or, on proper request under Bankruptcy Rule 3018(a), temporarily allows the Claim in an amount which the Bankruptcy Court deems proper for the purpose of voting on the Plan prior to the time for ballots to be returned. A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith and in accordance with the provisions of the Bankruptcy Code and Bankruptcy Rules.

1.      **Voting Classes and Presumed Acceptance.**

Holders of Allowed Claims in Classes 1 through 3 and 12 are not Impaired and not entitled to vote on the Plan.   Holders of Claims in these Classes, therefore, are conclusively presumed to accept the Plan pursuant to § 1126(f) of the Bankruptcy Code.   All other Classes of Claims are entitled to vote.

2.      **One Vote Per Holder.**

If a holder of a Claim holds more than one Claim in any one Class, all Claims of such holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims voting for or against the Plan.

3.      **Procedures and Deadlines for Completing Ballots and Voting.**

A ballot for accepting or rejecting the Plan is enclosed for use by those holders of Claims or Interests entitled to vote on the Plan.   Holders of Claims or Interests entitled to vote should carefully read this Disclosure Statement, the Plan and the instructions contained on the ballot and complete, date, sign and mail the ballot to the address indicated on the ballot so that it is received no later than _____,____ 2010.   Your acceptance or rejection of the Plan must be indicated by voting in favor of or against the Plan on the enclosed ballot.   You must complete and sign your original ballot (copies will not be accepted) and return it in the envelope provided. In order for your vote to be counted, your properly completed ballot must be actually received at the address indicated on the ballot no later than _____, ____2010 at 4:30 p.m., prevailing Mountain Time.

If you have questions about (i) the procedure for voting, (ii) the packet of materials you received, or (iii) the amount of your Claim, or if you wish to obtain, at your own expense (unless otherwise specifically required by Bankruptcy Rule 3017(d)), an additional copy or copies of the

Plan, this Disclosure Statement or any appendices or exhibits to such documents, please contact James W. Anderson, at Miller Guymon, P.C., at (801) 363-5600 or by mail, email or facsimile at the address listed on the cover sheet of this Disclosure Statement.

### 4.    Procedures for Vote Tabulation.

In determining whether the Plan has been accepted or rejected, any ballot timely received that contains sufficient information to permit the identification of the claimant, is signed by the claimant or an authorized agent, and is cast as an acceptance or rejection of the Plan will be counted.

The following ballots will not be counted in determining whether the Plan has been accepted or rejected: (a) any ballot received after the voting deadline as set by the Bankruptcy Court; (b) any ballot that is not signed or that contains insufficient information for the identification of the claimant; (c) any ballot timely received that indicates neither an acceptance nor a rejection of the Plan; (d) any ballot timely received that both indicates an acceptance and a rejection of the Plan; (e) any ballot cast by (i) a Creditor or Interest holder who is not listed as a Creditor or Interest holder on Debtors' Schedules or whose Claim or Interest is listed as disputed, contingent or unliquidated, and who has not timely filed a proof of claim or interest with respect to the Claim or Interest being voted; or (ii) a Creditor or Interest holder who has timely filed a proof of claim or interest that is the subject of an objection or a pending adversary proceeding disputing such Claim and who has not obtained the temporary allowance of its Claim for voting purposes; and (f) any ballot cast by an Entity who does not hold a Claim or Interest in the Class in which it voted.

Whenever two or more ballots are cast by the holder of the same Claim prior to the voting deadline, the last ballot received prior to the voting deadline will be deemed to reflect the

voter's intent and thus supersede prior ballots.

### 5.   Record Date

The entry date of the order approving this Disclosure Statement shall be the record date

for all Claims for voting purposes (the "Record Date").   Persons that did not hold an Allowed

Claim as of the Record Date will not be permitted to vote to accept or reject the Plan.

### 6.   Confirmation Hearing  - Rules Governing Objections to Confirmation

Pursuant to Section 1128 of the Bankruptcy Code and Bankruptcy Rule 3017(c),

the Confirmation Hearing is scheduled to commence on _____, 2010 at _____ __.m.

(prevailing Mountain Time), before the Honorable Joel T. Marker, in Courtroom 341 of the

United States Bankruptcy Court for the District of Utah, on the Third Floor of the United States

Courthouse, 350 South Main Street, Salt Lake City, Utah 84101. The Confirmation Hearing may

be continued from time to time by the Debtor or the Bankruptcy Court without further notice

other than by announcement of the continued date at the Confirmation Hearing or at any

subsequent continued Confirmation Hearing.

Objections to confirmation of the Plan are governed by Rule 9014 of the Bankruptcy

Rules.  Such objections, if any, must be in writing, must provide the name, current address and

telephone number of the objecting party and counsel, must set forth with specificity all factual

and legal bases for the objection, must specify the amount of such party's Claims or Interests,

and must be filed and served so as to be actually received by the Bankruptcy Court and each of

the following not later than _____, 2010:

> <u>To Counsel for the Debtor:</u>
> Blake D. Miller
> James W. Anderson
> Miller Guymon, P.C.
> 165 Regent Street
> Salt Lake City, Utah 84111

To the Office of the United States Trustee:

Peter Kuhn, Esq.
#9 Exchange Place
Suite 100
Salt Lake City, Utah 84111
Telephone: 801-524-3031
Facsimile: 801-524-5628

Pursuant to Bankruptcy Rule 3020(b)(2), the Bankruptcy Court may confirm the Plan without receiving evidence if no objection to confirmation is timely filed.

## II.    GENERAL INFORMATION ABOUT THE DEBTOR

### A.    The Resort

Wolf Creek Properties, LC, the Debtor, is the developer, owner and operator of the Wolf Creek Utah Resort and Club in Eden, Utah (the "Resort").   Eden, Utah is an unincorporated community in Weber County, Utah, located approximately fifteen miles east of Ogden, Utah and one hour north of the Salt Lake City International Airport.   The Resort spans approximately 3,007 acres.   The Debtor has entitlements for more than 2,500 residential units and more than 1,700 acres of permanent open space.   In addition, the Resort is comprised of:

1)      A 100 acre ski mountain having three lifts.   The ski mountain also boasts a magic carpet conveyor system, 56 snow making guns, night ski lighting, a terrain park and ski learning facilities.

2)      An 18-hole championship golf course, clubhouse and driving range;

3)      A ten acre lake;

4)      The Pineview Center, containing not only the Debtor's administrative offices but also banquet rooms and a kitchen. The Pineview Center hosts special events, weddings, corporate retreats, and member functions.  The Pineview Center is a 16,160 square feet building.

5)      A 12,730 square foot Clubhouse.

15

6)      A 10,560 square foot Discovery Center at the entrance to the Resort; and

7)      33 acres of commercial property.

**B.      Background of the Debtor**

Wolf Creek Resort was originally called "Patio Springs." Patio Springs was opened in the early 1900's and featured natural warm water springs, a bath house and a bandstand. Later, Patio Springs developed a 3-hole golf course and a ski tow rope.

The 18-hole Mark Ballif designed championship golf course opened in 1963. The 6,845 yard championship golf course has hosted many championship events, such as the Utah Amateur Championship and most recently, the Tournament of Champions. The course also contains practice facilities, such as a practice chipping area, and a putting green and driving range. In 2004-2005, over $1,000,000.00 was invested to upgrade the course. A state of the art 12,890 square foot golf maintenance building (with greenhouse) was completed in 2007.

In 1989, Wolf Creek Associates, LP was formed by eight investors and that entity acquired all of the existing assets of the Resort. In 2000, Steven Roberts and Steve Malachowski formed Eden Investments, LC and Eden Properties, LC. Eden Investments, LLC and Wolf Creek Associates then joined together to form Wolf Creek Properties, LC.

In July 2005, Wolf Creek Properties purchased the Nordic Valley Ski Area and changed the name to Wolf Mountain. Wolf Mountain consists of approximately 100 acres of groomed ski slopes with three lifts, a magic carpet and terrain park. The mountain is comprised of approximately 429 acres and is zoned for 398 units. It also contains 12 acres of commercial property and over 100 acres of ski runs. A lodge exists on the property which contains food services, a ski school and ski rentals. A yurt on the property serves as a teaching center during the winter months and is available for special events in the summer. Wolf Mountain is the least

expensive skiing and riding area in the state. Due to its location and price, it attracts many families. During the summer, the mountain is often used for mountain biking events and concerts.

In 2005, Wolf Creek developed the Wolf Creek Golf Club. Membership in the Club is limited to 150 memberships, comprised of 120 Single and Family Memberships, 10 Corporate Memberships and 20 Revolving Memberships. Single and Family Memberships allow the holders use of the golf course, driving range, advance and special tee times, membership in the Wolf Creek Recreational Center, and certain discounts in food and in the pro shop. Corporate Memberships provide for one foursome per day golf and other discounts. Both the Single, Family and Corporate Memberships require an initial deposit as well as monthly dues. The deposit is refundable under certain circumstances, without interest, subject to certain transfer fees and other obligations.

Revolving Memberships are single season memberships with no subscription fee and are entitled to the same benefits as Family Memberships. In addition, the Resort offered Legacy Memberships, which required a substantial one-time payment plus monthly dues. The Legacy Membership provided the right to convert to a recallable membership upon the sale or transfer of the member's real property in the community. There are twelve Legacy Memberships.

All of the membership interests in the Club provide only a revocable license to use the subject facilities and do not constitute a vested or prescriptive right or easement to use any of the facilities. Similarly, a membership does not constitute an investment or equity in the resort or the Debtor.

Food and beverage services include a member and guest only restaurant located on the top floor of the clubhouse. The bottom floor of the clubhouse is a casual restaurant which serves

breakfast and lunch and provides other food for golfers inside and outside the building.  The

restaurant facilities are operated by H&B Eden, LLC, an unrelated third party.

C.      **Ownership/Subsidiaries**

1.      **Ownership Structure.**  The Debtor is owned by Wolf Creek Associates, a Utah

limited partnership and Eden Investments, LLC.  Wolf Creek Associates holds 87.5% of the

membership interests and a 60% profit interest.  The remaining 12.5% membership interests and

40% profit interest is held by Eden Investments, LLC.  The member of Eden Investments, LLC

is Eden Properties, LLC.

2.      **Subsidiaries.**  Prior to bankruptcy, the Debtor owned an interest in the following

companies:

1.      Wolf Creek Resort Properties, LLC

2.      Valley Lodging, LLC

3.      Wolf Mountain, LC

4.      Powder Canyon Holdings, LC (15% interest)

5.      Wolf Management, Inc.

Wolf Creek Resort Properties, LLC operated a real estate brokerage for the real estate

sales of the resort.  Due to the severe down turn in real estate sales, this operation was closed on

April 1, 2010.

Valley Lodging, LLC was a brokerage company serving the temporary and vacation

lodging market in the Eden Valley.  At the time it operated, Lodging had approximately 200

contracts with homeowner and condominium owners in the area.  Valley Lodging also was the

lessee under a lease of the Red Moose Lodge.  The Red Moose Lodge is a 27 room hotel in

18

Eden.  Also due to the real estate recession, Valley Lodging ceased business operations on April 1, 2010.

Wolf Mountain operates the ski mountain and related facilities discussed above.

Powder Canyon is a proposed six building, 60 unit development, located at the entry to the resort.  The Debtor owns a 15% ownership interest in this company.

Wolf Management, Inc. owns three Utah corporations:

     1.      Wolf Creek Resort Management, Inc.;

     2.      Wolf Creek Water Company, Inc.; and

     3.      Wolf Creek Water Conservancy, Inc.

Wolf Creek Water Company, Inc. ("Water Co.") is a culinary water company serving not only Debtor's properties located within the Resort but other properties located in the Eden Valley owned by third parties.  Similarly, Wolf Creek Water Conservancy, Inc. ("Conservancy") is a secondary (irrigation) water company serving the golf course, other properties within the Resort as well as non-Resort properties located in Eden, Utah.

     3.    **Management**.  The Debtor is managed by a five member board.  Currently, the members are:

     1.      Steve Malachowski;

     2.      Peter Bohlinger;

     3.      Debra Buxton;

     4.      Lowell Peterson; and

     5.      Rob Thomas.

**D.** **Pre-Petition Secured Debt.**

1. **American First Credit Union.**

America First Credit Union was owed $10,068,424,66 as of the Petition Date. Its loan is secured by a Deed of Trust on the Mountain Property and the Northwest Parcel.

2. **Farm Bureau Life Insurance Company Michigan.**

Farm Bureau was owed $4,096,129.22 as of the Petition Date. Its loan is secured by a Trust Deed on the Clubhouse, the Pineview Center and certain associated personal property.

3. **Zions First National Bank.**

Zions First National Bank was owed $1,779,656.85 as of the Petition Date. Zions Bank's loan is secured by a Deed of Trust on the Golf Course and certain undeveloped real estate surrounding the golf course.

4. **Secured Claim of Capon Capital.**

1320 Wolf was owed $650,000 as of the Petition Date. This obligation is secured by Parcels 7 and 16. After the Petition Date, Capon Capital acquired this claim.

5. **Wolf Creek First Mortgage, LP.**

Wolf Creek First Mortgage, LP was owed $1,625,000 as of the Petition Date. This obligation is secured by a lien on the Discovery Center and Parcel 10B.

6. **McFarlane Family Trust.**

McFarlane Family Trust was owed $250,000.00 as of the Petition Date. The loan is secured by a first position lien on the 74.5 acre balloon fest parcel.

7.    **Randy Marriott Construction.**

Randy Marriott Construction holds a mechanic's lien (disputed) on Parcel 7.    Randy Marriott Construction claim was $449,708.88 as of the Petition Date.

E.    **Events Leading to Commencement of Chapter 11 Cases**

As a real estate developer and resort operator, the severe downturn in the real estate and resort business greatly affected the Debtor.  During the last year, the Debtor has been involved in negotiations and discussions with potential investors and purchasers designed to infuse sufficient capital to allow the Resort to continue as a whole pending a modest return of the real estate market.

As revenues declined due to the real estate recession, the Debtor responded, in part, by aggressively cutting expenses.  For example, the Debtor's staff was cut from approximately 75 employees to 21 as of the Petition Date.

On March 10, 2010, America First Credit Union recorded a Notice of Default on this loan.  This was followed on May 7, 2010 by a Notice of Default recorded by Farm Bureau.

Desiring to continue its effort to locate a funding source and maintain the value of the Resort as a whole, on June 9, 2009, the Debtor filed a Voluntary Petition for Relief under Chapter 11 in the United States District Court for the District of Utah.  The Debtor's efforts to locate an investor/funding source have continued after the Petition Date.

**III.    THE DEBTORS' CHAPTER 11 CASE**

A.    **Filing**

On the Petition Date, the Debtor filed its bankruptcy petition under chapter 11 of the Bankruptcy Code.  The Debtor has continued to operate its business and manage its

properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**B.      Events During the Case.**

Since the Petition Date, the Debtor operated the Resort.  The Debtor opened up the Golf Course to public play.  As a result, the Debtor has experienced a significant increase in the usage of the golf course, resulting in a revenue increase.  To date, golfers have played approximately 9,400 rounds at the Debtor's golf course since the Petition Date.

The Debtor believes that the value of the Resort as a whole exceeds the sum of the individual values of its components.  In order to preserve this value, the Debtor also continued its efforts during the case to obtain third party funding.  Substantial time and effort was spent with several groups that expressed solid interest in funding and/or acquiring the resort. General concerns regarding the immediate future of the United States economy and, in particular, U.S. resorts and vacation real estate, have motivated these investors to proceed cautiously.  Although the Debtor does not have a commitment yet, it intends to continue its efforts to secure the requisite funding.

The Debtor has also spent considerable time in locating and negotiating with a potential buyer of the Water Co. and Conservancy.  The Debtor expects to be able to submit a proposed sale of the Water Co. and Conservancy to the Court and creditors by the time of approval of this Disclosure Statement.  The sale of these companies will provide the requisite liquidity to allow the Debtor to fund its operations post confirmation.

The Debtor has recently received notice from the Utah Department of Transportation ("UDOT") of this entity's intent to take or purchase certain unimproved land and easements

located adjacent to State Road 158. UDOT has offered $97,156.00 for the value of the real property interests and $99,844.00 for cure, business and relocation damages.

The Debtor has also agreed to accept a $350,000 debtor-in-possession loan from Ray Bowden and Lowell Petersen. Mr. Bowden is unrelated to the Debtor, but does hold a pre-petition unsecured Claim against the Debtor. Mr. Petersen is a member of the Debtor's Board and holds an unsecured Claim. This loan will carry interest at the rate of 18% per annum and will be secured by (i) the assets of Water Co; (ii) the assets of Conservancy; (iii) a first position lien on Parcels 22-017-0013 and 22-017-0016; and (iv) a second position lien on the 64.5 acre Balloon Field Parcel (without the adjacent lake). The Debtor anticipates obtaining Court approval of this loan prior to the hearing on this Disclosure Statement.

### 1.    Employee Pre-Petition Wage Claims

On motion of the Debtor, on June 25, 2010, the Bankruptcy Court authorized the Debtor to pay 20 pre-petition wage Claims of the Debtor's employees. The Debtor believes that all pre-petition employee wage Claims have thus been paid.

### 2.    Retention of Debtors' Professionals

On or about the Petition Date, the Debtors sought authority to retain Miller Guymon, P.C. as Debtors' general bankruptcy counsel. On August 3, 2010, the Court entered an order approving the retention of Miller Guymon, P.C.

Following application of the Debtor, on August 4, 2010, the Court approved the retention of Parr Brown as the Debtor's special counsel for water rights issues.

On October 1, 2010, the Debtor filed an application to retain Crane Christensen & Ambrose to perform accounting work for the Debtors.

On August 30, 2010, the Debtor filed an application to retain Cushman and Wakefield of Colorado, Inc. to perform real estate appraisal work for the Debtors.

**3.      Unsecured Creditors Committee**

On September 30, 2010, the United States Trustee appointed the following three members as the Unsecured Creditor's Committee in this case:

> RLP Properties (Ron Rubin – Chairperson)
>    -Portland Oregon
>
> Wolf Creek Recreational Facilities Association, Inc. (Robert T. Coffin)
>    -- Redmond, Washington
>
> Strategic Marketing Group, Inc. (Melisa MenKemeller)
>    -- Park City, Utah

**C.      Schedules, Bar Date and Summary of Claims**

**1.      Schedules and Statements**

On June 30, 2010, the Debtor timely filed its Statements of Financial Affairs and Schedules of Assets and Liabilities (collectively, the "Schedules").

**2.      Bar Date**

Pursuant to Local Bankruptcy Rule 3003-1(a), "[i]n a chapter 11 case, a proof of claim or interest is timely filed if it is filed not later that 90 days after the first date set for the meeting for creditors under § 341 of the Code, or, if filed by a governmental unit, not later than 180 days after the date of the order for relief." LBR 3003-1(a). Thus, October 6, 2010 (the "Bar Date") is the date and time by which proofs of claim by all claimants (other than governmental units) are required to be filed. The deadline for a governmental unit to file a proof of claim is December 6, 2010.

### 3.      Summary of Claims

As of October 6, 2010, 113 proofs of claim have been filed in this case. The Debtor will be reviewing the proofs of claim and comparing them to its books and records and will object to proofs of claim when, and if, appropriate.

As of October 7, 2010, $9,224,030.11 in General Unsecured Claims, $73,211,471.85 in Secured Claims and $271,563.60 in Priority Claims have been scheduled or filed and not disallowed or expunged pursuant to Court orders.

## IV.    THE PLAN

### A.      Purpose of Plan.

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11 of the Bankruptcy Code, a debtor is authorized to reorganize its business for the benefit of itself, its creditors and its equity interest holders. In addition to permitting the rehabilitation of a debtor, another goal of chapter 11 is to promote equality of treatment for similarly situated creditors with respect to the distribution of a debtor's assets.

The commencement of a chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the Petition Date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The consummation of a plan of reorganization is the principal objective of a chapter 11 reorganization case. A chapter 11 plan sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a chapter 11 plan by the Bankruptcy Court binds the debtor, any issuer of securities under the plan, any person acquiring property under the plan and any creditor or equity interest holder of a debtor whether or not such creditor or equity

interest holder (i) is impaired under or has accepted the plan or (ii) receives or retains any property under the plan. Subject to certain limited exceptions, the order approving confirmation of a plan discharges a debtor from any debt that arose prior to the date of confirmation of the plan and substitutes therefor the obligations specified under the confirmed plan.

The Debtor believes that implementation of the Plan will provide holders of Allowed Claims and Interests a greater distribution than they would receive if this case was converted to a Chapter 7 case. The summary of the Plan set forth below is qualified in its entirety by reference to the provisions of the Plan.

**B.      Classification and Treatment of Claims and Interests**

Section 1123 of the Bankruptcy Code provides that a plan of reorganization must provide certain treatment for Administrative Expense and Priority Tax Claims and otherwise classify claims and interests and provide for their treatment. As a result, the Plan (a) describes the treatment to be afforded to Administrative Expense Claims (which includes claims of compensation by professionals) and Priority Tax Claims and United States Trustee Quarterly Fees and Other Statutory Fees and (b) classifies Claims and Interests in separate Classes and provides different treatment for different Classes of Claims and Interests. As described more fully below, the Plan provides, separately for each Class, that holders of certain Claims will receive various amounts and types of consideration, thereby giving effect to the different rights of holders of Claims and Interests in each Class.

**C.      Plan Overview.**

The following is only a general overview of the Plan, and is qualified in its entirety by, and should be read in conjunction with, the more detailed discussions, information and financial

statements appearing elsewhere in this Disclosure Statement and the Plan. Certain provisions of the Plan, and thus the descriptions and summaries in this Disclosure Statement, may be the subject of further negotiations that are subject to change. The Debtor is reserving the right to amend or modify the Plan consistent with § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**D.     Summary of Treatment of Claims and Interests.**

The following is a brief summary of the treatment of Claims and Interests under the Plan. A Claim or Interest is placed in a particular Class for purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled. In accordance with the Bankruptcy Code, Allowed Administrative Claims and Allowed Priority Tax Claims have not been classified.

1.     **Unclassified Claims**.

In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, have not been classified, and the respective treatment of such unclassified Claims is set forth in Article II of the Plan. Unclassified Claims are to be treated as follows:

a.     <u>Administrative Expense Claims</u>. Except to the extent that the holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, each Allowed Administrative Expense Clam shall be paid in full on or as soon as reasonably practicable following the later to occur of (a) the Effective Date, or (b) the date on which such administrative expense Claim becomes an Allowed Claim. Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor post-petition are to be paid by the Debtor in the ordinary course of business, consistent with past practice and in

27

accordance with the terms and subject to conditions of any agreements governing such transactions.

b.    <u>DIP Claims</u>.   Except to the extent that a DIP Lender agrees to a different treatment, any remaining unpaid DIP Claims shall be paid in full on the Effective Date.

c.    <u>United States Trustee Quarterly Fees and Other Statutory Fees</u>.   All fees due and payable under §1930 of Title 28 shall be paid within ten business days after the Effective Date.   In addition, the Reorganized Debtor shall pay the United States Trustee quarterly fees due and payable on all disbursements until entry of a Final Decree, dismissal of the case or conversion of the case to a case under Chapter 7.

**2.    Classified Claims Against and Interests in the Debtor.**

| Class Description | Proposed Treatment Under the Plan For Holders Of Allowed Claims Or Interests In Each Class |
| --- | --- |
| Class 1 – Employee Claims – Unimpaired – Not Voting | Cash in the Allowed Amount on the later of the Effective Date or the date the Claim becomes an Allowed Claim. |
| Class 2 – Priority Tax Claims – Unimpaired – Not Voting | At the Debtor's option, either (a) cash in an amount equal to such Allowed Priority Tax Claim on the Effective date; (b) in accordance with § 1129(a)(9)(C) of the Bankruptcy Code, equal semi-annual cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at the applicable non-bankruptcy rate, commencing upon the Effective Date and continuing over a period ending not later than five years after the Effective Date; or (c) such other treatment as shall be determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim. |
| Class 3 – Other Priority Claims – Unimpaired – Not Voting | Cash in an amount equal to such Allowed Other Priority Claim on the later of the Effective Date or the date such Other Priority Claim becomes an Allowed Other Priority |

| | Claim, or as soon thereafter as is practicable. |
|---|---|
| Class 4 – Weber County – Impaired –Voting | All pre-petition liens securing the Claims of this Class shall be preserved, having the same rights and priorities accorded to such liens as of the Petition Date.  Following the Effective Date, interest shall accrue on the Claims of the Class at the Plan Rate.  Interest shall be paid on the first of each month commencing on the first day of the month following the Effective Date and continue for a total of 12 successive months.<br><br>If a Funding Event occurs within 12 months after the Effective Date, this Claim may be paid in full or in part at the closing of such Funding Event.  If a Funding Event occurs within 12 months from the Effective Date and the Claim of this Class is not paid in full at the closing of the Funding Event, the unpaid portion of the Claim shall be paid no less favorably than by:<br><br>    a.    Payments of interest at the Plan Rate on the first of every month commencing on the 13th month from the Effective Date and continuing through the 31st month from the Effective Date;<br><br>    b.    Commencing on the first day of the 32nd month following the Effective Date and continuing on the first day of each successive month for seven years, payments of principal and interest shall be paid, based on a straight line 25 year amortization schedule;<br><br>    c.    On the first day of the month ten years following the Effective Date, the remaining balance of the Claim shall be paid in full.<br><br>If a Funding Event does not occur within 12 months after the Effective Date, interest at the Plan Rate will be paid monthly.  The real |

| | |
|---|---|
| | property collateral securing the Claims of this Class will be actively marketed for sale. Such property may be marketed separately or together with other property of the Debtor, in the Debtor's discretion. If a sale is obtained which would result in payment in full of the amount of this Claim, no consent of the holder of the Claims of this Class shall be required. If the sale is only of a portion of the entire collateral securing the Claims of this Class, the Debtor shall be entitled to sell the property provided that the ratio of the remaining amount of the Claim after payment under the subject sale to the remaining collateral is not less than the ratio of the amount of the Claim on the Effective Date to the Collateral Value as of the Effective Date. If a sale is of the entire collateral and will not produce sufficient net proceeds to pay, in full, the Claims of this Class, the sale shall require the consent of the Claim holder. In any such sale of the entire collateral producing insufficient net proceeds, the Claim holder shall also have the right to credit bid the amount of its unpaid Claim. If any portion of the underlying collateral is not sold within 24 months following the Effective Date, all such property shall be auctioned at a nationally advertised auction and the net proceeds payable to all lien holders in the order of their priority. The auction shall occur within a reasonable time following the expiration of such 24th month period. Any amounts remaining after payment of secured Claims shall be paid to the Reorganized Debtor. |
| Class 5 – Secured Claim of America First Credit Union – Impaired - Voting | All pre-petition liens securing the Claims of this Class shall be preserved, having the same rights and priorities accorded to such liens as of the Petition Date. Following the Effective Date, interest shall accrue on the Claims of the Class at the Plan Rate. Interest shall be paid on the first of each month commencing on the first day of the month following the Effective Date and continue for a total of 12 successive months. |

30

| | |
|---|---|
| | If a Funding Event occurs within 12 months after the Effective Date, this Claim may be paid in full or in part at the closing of such Funding Event.  If a Funding Event occurs within 12 months from the Effective Date and the Claim of this Class is not paid in full at the closing of the Funding Event, the unpaid portion of the Claim shall be paid no less favorably than by:<br><br>    a.   Payments of interest at the Plan Rate on the first of every month commencing on the 13th month from the Effective Date and continuing through the 31st month from the Effective Date;<br><br>    b.   Commencing on the first day of the 32nd month following the Effective Date and continuing on the first day of each successive month for seven years, payments of principal and interest shall be paid, based on a straight line 25 year amortization schedule;<br><br>    c.   On the first day of the month ten years following the Effective Date, the remaining balance of the Claim shall be paid in full.<br><br>If a Funding Event does not occur within 12 months after the Effective Date, the Claim holder will receive a deed in lieu of the Northwest Parcel in full satisfaction of its Claim.  Such transfer shall be conditioned on the Claim holder receiving title to such property without any encumbrance junior to the lien the Claim holder possessed immediately prior to the Effective Date. |
| Class 6 – Secured Claim of Farm Bureau Life Insurance Company of Michigan – Impaired - Voting | All pre-petition liens securing the Claims of this Class shall be preserved, having the same rights and priorities accorded to such liens as of the Petition Date.  Following the Effective Date, interest shall accrue on the Claims of the |

Class at the Plan Rate.  Interest shall be paid on the first of each month commencing on the first day of the month following the Effective Date and continue for a total of 12 successive months.

If a Funding Event occurs within 12 months after the Effective Date, this Claim may be paid in full or in part at the closing of such Funding Event.  If a Funding Event occurs within 12 months from the Effective Date and the Claim of this Class is not paid in full at the closing of the Funding Event, the unpaid portion of the Claim shall be paid no less favorably than by:

> a.   Payments of interest at the Plan Rate on the first of every month commencing on the 13th month from the Effective Date and continuing through the 31st month from the Effective Date;

> b.   Commencing on the first day of the 32nd month following the Effective Date and continuing on the first day of each successive month for seven years, payments of principal and interest shall be paid, based on a straight line 25 year amortization schedule;

> c.   On the first day of the month ten years following the Effective Date, the remaining balance of the Claim shall be paid in full.

If a Funding Event does not occur within 12 months after the Effective Date, interest at the Plan Rate will be paid monthly.   In satisfaction of the $3,100,000, the Claim holder will receive a deed in lieu of the Pineview Center and a bill of sale for the furniture and equipment located therein and subject to the Claim holder's security interest. Such transfer shall be conditioned on the Claim

| | holder receiving title to such property without any encumbrance junior to the lien the Claim holder possessed immediately prior to the Effective Date.  The Clubhouse and subject furniture and equipment will be actively marketed for sale.  Such property may be marketed separately or together with other property of the Debtor, in the Debtor's discretion.  If a sale is obtained which would result in payment in full of the amount of this Claim, no consent of the holder of the Claims of this Class shall be required.  If a sale will not produce sufficient net proceeds to pay, in full, the Claims of this Class, the sale shall require the consent of the Claim holder.  In any such sale producing insufficient net proceeds, the Claim holder shall also have the right to credit bid the amount of its unpaid Claim.   If the Clubhouse and/or furniture and equipment is not sold within 24 months following the Effective Date, the real property shall be auctioned at a nationally advertised auction and the net proceeds payable to all lien holders in the order of their priority.  The furniture and equipment may either be auctioned together with the Clubhouse or separately in a locally advertised and conducted auction.  Both auctions, if applicable, shall occur within a reasonable time following the expiration of such 24th month period.  Any amounts remaining after payment of secured Claims shall be paid to the Reorganized Debtor. |
|---|---|
| Class 7 – Secured Claim of Zions First National Bank – Impaired - Voting | All pre-petition liens securing the Claims of this Class shall be preserved, having the same rights and priorities accorded to such liens as of the Petition Date.  Following the Effective Date, interest shall accrue on the Claims of the Class at the Plan Rate.  Interest shall be paid on the first of each month commencing on the first day of the month following the Effective Date and continue for a total of 12 successive months.

If a Funding Event occurs within 12 months after the Effective Date, this Claim may be paid in full or in part at the closing of such |

Funding Event.  If a Funding Event occurs within 12 months from the Effective Date and the Claim of this Class is not paid in full at the closing of the Funding Event, the unpaid portion of the Claim shall be paid no less favorably than by:

> a.   Payments of interest at the Plan Rate on the first of every month commencing on the 13th month from the Effective Date and continuing through the 31st month from the Effective Date;

> b.   Commencing on the first day of the 32nd month following the Effective Date and continuing on the first day of each successive month for seven years, payments of principal and interest shall be paid, based on a straight line 25 year amortization schedule;

> c.   On the first day of the month ten years following the Effective Date, the remaining balance of the Claim shall be paid in full.

If a Funding Event does not occur within 12 months after the Effective Date, interest at the Plan Rate will be paid monthly.  The real property collateral securing the Claims of this Class will be actively marketed for sale.  Such property may be marketed separately or together with other property of the Debtor, in the Debtor's discretion.  If a sale is obtained which would result in payment in full of the amount of this Claim, no consent of the holder of the Claims of this Class shall be required.  If the sale is only of a portion of the entire collateral securing the Claims of this Class, the Debtor shall be entitled to sell the property provided that the ratio of the remaining amount of the Claim after payment under the subject sale to the remaining collateral is not less than the ratio of the amount of the Claim on the

| | Effective Date to the Collateral Value as of the Effective Date.  If a sale is of the entire collateral and will not produce sufficient net proceeds to pay, in full, the Claims of this Class, the sale shall require the consent of the Claim holder.  In any such sale of the entire collateral producing insufficient net proceeds, the Claim holder shall also have the right to credit bid the amount of its unpaid Claim.   If any portion of the underlying collateral is not sold within 24 months following the Effective Date, all such property shall be auctioned at a nationally advertised auction and the net proceeds payable to all lien holders in the order of their priority.  The auction shall occur within a reasonable time following the expiration of such 24th month period.  Any amounts remaining after payment of secured Claims shall be paid to the Reorganized Debtor. |
|---|---|
| Class 8 – Secured Claim of Capan Capital - Impaired - Voting | All pre-petition liens securing the Claims of this Class shall be preserved, having the same rights and priorities accorded to such liens as of the Petition Date.  Following the Effective Date, interest shall accrue on the Claims of the Class at the Plan Rate.  Interest shall be paid on the first of each month commencing on the first day of the month following the effective date and continue for a total of 12 successive months.

If a Funding Event occurs within 12 months after the Effective Date, this Claim may be paid in full or in part at the closing of such Funding Event.  If a Funding Event occurs within 12 months from the Effective Date and the Claim of this Class is not paid in full at the closing of the Funding Event, the unpaid portion of the Claim shall be paid no less favorably than by:

      a.    Payments of interest at the Plan Rate on the first of every month commencing on the 13th month from the Effective Date and continuing through the 31st month from the |

Effective Date;

b.     Commencing on the first day of the 32nd month following the Effective Date and continuing on the first day of each successive month for seven years, payments of principal and interest shall be paid, based on a straight line 25 year amortization schedule;

c.     On the first day of the month ten years following the Effective Date, the remaining balance of the Claim shall be paid in full.

If a Funding Event does not occur within 12 months after the Effective Date, interest at the Plan Rate will be paid monthly.  The real property collateral securing the Claims of this Class will be actively marketed for sale.  Such property may be marketed separately or together with other property of the Debtor, in the Debtor's discretion.  If a sale is obtained which would result in payment in full of the amount of this Claim, no consent of the holder of the Claims of this Class shall be required.  If the sale is only of a portion of the entire collateral securing the Claims of this Class, the Debtor shall be entitled to sell the property provided that the ratio of the remaining amount of the Claim after payment under the subject sale to the remaining collateral is not less than the ratio of the amount of the Claim on the Effective Date to the Collateral Value as of the Effective Date.  If a sale is of the entire collateral and will not produce sufficient net proceeds to pay, in full, the Claims of this Class, the sale shall require the consent of the Claim holder.  In any such sale of the entire collateral producing insufficient net proceeds, the Claim holder shall also have the right to credit bid the amount of its unpaid Claim.   If any portion of the underlying collateral is not sold within 24 months following the Effective Date, all such property shall be auctioned at a

| | |
|---|---|
| | nationally advertised auction and the net proceeds payable to all lien holders in the order of their priority. The auction shall occur within a reasonable time following the expiration of such 24th month period. Any amounts remaining after payment of secured Claims shall be paid to the Reorganized Debtor. |
| Class 9 – Secured Claim of Wolf Creek First Mortgage, LP – Impaired - Voting | All pre-petition liens securing the Claims of this Class shall be preserved, having the same rights and priorities accorded to such liens as of the Petition Date. Following the Effective Date, interest shall accrue on the Claims of the Class at the Plan Rate. Interest shall be paid on the first of each month commencing on the first day of the month following the effective date and continue for a total of 12 successive months.<br><br>If a Funding Event occurs within 12 months after the Effective Date, this Claim may be paid in full or in part at the closing of such Funding Event. If a Funding Event occurs within 12 months from the Effective Date and the Claim of this Class is not paid in full at the closing of the Funding Event, the unpaid portion of the Claim shall be paid no less favorably than by:<br><br>a.  Payments of interest at the Plan Rate on the first of every month commencing on the 13th month from the Effective Date and continuing through the 31st month from the Effective Date;<br><br>b.  Commencing on the first day of the 32nd month following the Effective Date and continuing on the first day of each successive month for seven years, payments of principal and interest shall be paid, based on a straight line 25 year amortization schedule;<br><br>c.  On the first day of the month |

| | |
|---|---|
| | ten years following the Effective Date, the remaining balance of the Claim shall be paid in full. |
| | If a Funding Event does not occur within 12 months after the Effective Date, the Claim holder will receive a deed in lieu of the Discovery Center in full satisfaction of its Claim.  Such transfer shall be conditioned on the Claim holder receiving title to such property without any encumbrance junior to the lien the Claim holder possessed immediately prior to the Effective Date. |
| Class 10 – Secured Claim of McFarlane Family Trust – Impaired - Voting | All pre-petition liens securing the Claims of this Class shall be preserved, having the same rights and priorities accorded to such liens as of the Petition Date.  Following the Effective Date, interest shall accrue on the Claims of the Class at the Plan Rate.  Interest shall be paid on the first of each month commencing on the first day of the month following the effective date and continue for a total of 12 successive months.<br><br>The holders of the Claims of this Class shall be paid, in full, from the earlier of the sale of Conservancy or Water Company. |
| Class 11 – Secured Claim of Randy Marriott Construction – Impaired - Voting | All pre-petition liens securing the Claims of this Class shall be preserved, having the same rights and priorities accorded to such liens as of the Petition Date.  Following the Effective Date, interest shall accrue on the Claims of the Class at the Plan Rate.  Interest shall be paid on the first of each month commencing on the first day of the month following the Effective Date and continue for a total of 12 successive months.<br><br>If a Funding Event occurs within 12 months after the Effective Date, this Claim may be paid in full or in part at the closing of such Funding Event.  If a Funding Event occurs within 12 months from the Effective Date and the Claim of this Class is not paid in full at the closing of the Funding Event, the unpaid portion of the Claim shall be paid no less |

favorably than by:

      a.   Payments of interest at the Plan Rate on the first of every month commencing on the 13th month from the Effective Date and continuing through the 31st month from the Effective Date;

      b.   Commencing on the first day of the 32nd month following the Effective Date and continuing on the first day of each successive month for seven years, payments of principal and interest shall be paid, based on a straight line 25 year amortization schedule;

      c.   On the first day of the month ten years following the Effective Date, the remaining balance of the Claim shall be paid in full.

If a Funding Event does not occur within 12 months after the Effective Date, interest at the Plan Rate will be paid monthly. The real property collateral securing the Claims of this Class will be actively marketed for sale. Such property may be marketed separately or together with other property of the Debtor, in the Debtor's discretion. If a sale is obtained which would result in payment in full of the amount of this Claim, no consent of the holder of the Claims of this Class shall be required. If the sale is only of a portion of the entire collateral securing the Claims of this Class, the Debtor shall be entitled to sell the property provided that the ratio of the remaining amount of the Claim after payment under the subject sale to the remaining collateral is not less than the ratio of the amount of the Claim on the Effective Date to the Collateral Value as of the Effective Date. If a sale is of the entire collateral and will not produce sufficient net proceeds to pay, in full, the Claims of this Class, the sale shall require the consent of the

| | Claim holder.  In any such sale of the entire collateral producing insufficient net proceeds, the Claim holder shall also have the right to credit bid the amount of its unpaid Claim.   If any portion of the underlying collateral is not sold within 24 months following the Effective Date, all such property shall be auctioned at a nationally advertised auction and the net proceeds payable to all lien holders in the order of their priority.  The auction shall occur within a reasonable time following the expiration of such 24th month period.  Any amounts remaining after payment of secured Claims shall be paid to the Reorganized Debtor. |
|---|---|
| Class 12 – Secured Claim of Ford Credit – Unimpaired – Not Voting | The Claims of this Class are secured by a lien on the Debtor's Ford 350 pickup and Ford Econoline.  The holders of the Claims of this Class shall retain all prepetition Liens securing the Claims of this Class having the same rights and priorities accorded to such Liens as of the Petition Date.<br><br>The holders of the Claims of this Class shall continue to receive the payments set forth in the pre-petition contracts memorializing this Claim. |
| Class 13 - Unsecured Claims – Impaired - Voting | Unless otherwise agreed by the Debtor and the holders of a specific Claim in the Claims of this Class as to a less favorable treatment:<br><br>Funding Event.  If a Funding Event occurs within 12 months after the Effective Date, Claim holders shall receive ___ quarterly payments which shall total, in the aggregate 66.67 percent of their Allowed Claim.<br><br>No Funding Event.  If a Funding Event does not occur within 12 months after the Effective Date, Claim holders shall receive on the Liquidation Fund Distribution Date, a pro rata share of the Liquidation Fund as of that date, up to a maximum of 66.67 percent of their respective Allowed Claims. |
| Class 14 – Interest - Impaired - Voting | Interest holders shall receive: |

|  | Funding Event.  If a Funding Event occurs within 12 months after the Effective Date, Claim holders shall retain their interests in the Debtor.  Interest holders, however, will not be entitled to receive distributions pending payment of all Class 13 Claims as provided in the Plan.<br><br>No Funding Event.  If a Funding Event does not occur within 12 months after the Effective Date, Claim holders shall receive payment on the Liquidation Fund Distribution Date, a pro rata share of the Liquidation Fund as of that date, following the completion of Plan payments to Claims 1 through 13. |
|---|---|

## D.    Plan Implementation

### 1.    General

The Plan shall be implemented through the means contemplated by sections 1123(a)(5),

(b)(3) and (b)(4) of the Bankruptcy Code (a) prior to the Effective Date by the Debtor and (b) on

and after the Effective Date, by the Reorganized Debtor.  Pursuant to the Confirmation Order,

the Debtor or the Reorganized Debtor, as applicable, may take all actions as may be necessary or

appropriate to effect any transaction described in, approved by, contemplated by, or necessary to

effectuate the Plan.  Without limiting the foregoing, such transactions may include:  (i) the

execution and delivery of appropriate agreements or other documents of merger, consolidation,

or reorganization containing terms that are consistent with the terms of the Plan and that satisfy

the requirements of applicable law; (ii) the execution and delivery of appropriate instruments of

transfer, assignment, assumption, or delegation of any property, right, liability, duty, or

obligation on terms consistent with the terms of the Plan; (iii) the filing of appropriate

certificates of incorporation, merger, or consolidation with the appropriate governmental

41

authorities pursuant to applicable law; and (iv) all other actions the Debtor and the Reorganized

Debtor determine are necessary or appropriate.

### 2.      Vesting of Assets; Release of Liens

Except as otherwise provided in the Plan or any agreement, instrument, or other

document relating thereto, on or after the Effective Date, all property in the Estate, including all

Assets, and any property acquired by the Debtor shall vest in the Reorganized Debtor on the

Effective Date.  Thereafter, the Reorganized Debtor may manage its assets and may use, acquire,

dispose of property, and settle or compromise Claims or Interests, free of any restrictions of the

Bankruptcy Code or the Bankruptcy Rules. Except as provided in this Plan or any contract,

instrument, release or other agreement created in connection with this Plan, on the Effective

Date, all liens, claims and encumbrances against the property of the Reorganized Debtor shall be

fully and completely released and discharged and all such assets or property shall be free and

clear of any such liens, claims and encumbrances.

### 3.      Preservation of Causes of Action

In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as otherwise

provided in the Plan, all Causes of Action transferred to the Reorganized Debtor shall be retained

by the Reorganized Debtor, and shall have the power and authority to prosecute and defend all

such Causes of Action.

### 4.      Hiring of Employees; Retention of Professionals

The Reorganized Debtor shall be authorized, without further order of the Bankruptcy

Court, to hire such employees and retain such professionals as it may deem necessary to

discharge its obligations, and the costs of such employment and other expenditures shall be paid

by the Reorganized Debtor from its Expense Reserve without further approval of the Bankruptcy

Court.

### 5.    Compromise and Settlement

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Reorganized Debtor may, subject to approval of the Bankruptcy Court, compromise and settle Claims against the Reorganized Debtor or any claims the Reorganized Debtor or the Estate may have against other Persons.  The Debtor hereby reserves the right, with approval of the Bankruptcy Court, to compromise and settle Claims against the Debtor or claims the Debtor or the Estate may have against other Persons up to and including the Effective Date.  On the Effective Date, such rights shall pass to the Reorganized Debtor, and thereafter, Claims against the Reorganized Debtor or claims the Reorganized Debtor or the Estate may have against other Persons may be compromised and settled exclusively by the Reorganized Debtor, without approval of the Bankruptcy Court; provided, however, that approval of the Bankruptcy Court, on appropriate application, shall be required for any such compromise or settlement (a) with any "insider" of the Reorganized Debtor, as such term is defined in section 101(31) of the Bankruptcy Code, or (b) where the asserted claim compromised is in excess of $100,000.

### 6.    Terms of Injunctions or Stays

All injunctions or stays provided for in the Chapter 11 Case pursuant to §§ 105 or 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.  If the Plan is not confirmed, all such injunctions or stays shall remain in full force and effect until ordered otherwise by the Bankruptcy Court or until an alternative plan of reorganization is confirmed in the Reorganized Debtor's Chapter 11 Case or the Reorganized Debtor's Chapter 11 Case is dismissed.  Except as may be determined otherwise by Final Order of the Bankruptcy Court, all distributions and transfers of property pursuant to the Plan shall be made free and clear of all liens, claims and encumbrances and, on the Confirmation Date, all holders of Claims or Interests shall be permanently enjoined from and restrained against

commencing or continuing any suit, action or proceeding against the Reorganized Debtor, or asserting against the Reorganized Debtor or the assets or property thereof, any claim, interest or cause of action based upon any act or omission, transaction or other activity of any kind that occurred prior to Confirmation.

### 7.    Continuation of Business and Efforts to Obtain Funding.

Post confirmation, the Reorganized Debtor will continue its business as conducted by the Debtor pre-Effective Date.  In particular, the Reorganized Debtor will operate and maintain the Resort, including golf, skiing and other Resort activities.   After the Effective Date, the Reorganized Debtor will continue the Debtor's efforts to obtain funding or equity investments sufficient to allow the Resort to continue.  Should such funding or investments not be obtained by 12 months after the Effective Date, the Reorganized Debtor will commence a structured liquidation in the following manner.

### 8.    Structured Liquidation and Wind-down Alternative

Should the requisite funding or investments not be obtained by 12 months from the Effective Date, the Reorganized Debtor will commence a structured liquidation in the following manner.

    A.  During the following eighteen months, the Reorganized Debtor will commence a wind-down of all business activities.  Only business activities that produce a net cash flow will be maintained during this period.  All real estate development activities will immediately cease.  The Reorganized Debtor will incur only those expenses necessary to preserve and protect the various properties of the Resort and support the net cash flow operations.  During this period, the Reorganized Debtor will commence efforts to market and sell all of its real and personal property.  If not already sold, the Reorganized Debtor will also sell its interest in both Conservancy and Water Company.  The Reorganized Debtor shall obtain the services of one or more third party brokers capable of marketing similar properties on a national scale.  The Resort properties may be sold individually or together with other properties in the discretion of the Reorganized Debtor.

B. The Reorganized Debtor may sell property which constitutes a portion of the collateral secured by a lien, provided that the ratio of the remaining amount of the Claim after payment under the subject sale to the remaining collateral is not less than the ratio of the amount of the Claim on the Effective Date to the Collateral Value as of the Effective Date. All such sales shall be free and clear of existing liens and encumbrances, with such liens and encumbrances to attach to the proceeds of sale. If a sale is of the entire collateral but will not produce sufficient net proceeds to pay, in full, all liens on the property, the sale shall require the consent of all lienholders. In any such sale of the entire collateral producing insufficient net proceeds, all lienholders shall have the right to credit bid the amount of their respective unpaid Claims. All sales in excess of $100,000 will be subject to Court approval.

C. For those properties that will be transferred to the respective lienholders in full or partial satisfaction of their Claims pursuant to the Plan, the Reorganized Debtor will not sell such properties but will transfer such Properties to the lienholder in accordance with the provisions of the Plan.

D. All of the Reorganized Debtor's property not sold within 24 months following the Effective Date shall be auctioned at a nationally advertised auction. The auction shall occur within a reasonable time following the expiration of such 24 month period.

E. All funds received from the sale of the Reorganized Debtor's assets shall be placed in one or more bank accounts which meet the requirements of 11 U.S.C. §345.

F. All funds from the sale of property subject to valid liens or encumbrances at the time of sale shall remain subject to such liens or encumbrances, in the order of priority of such liens at the time of sale. All such liens shall be paid in accordance with the provisions of the Plan.

G. The Reorganized Debtor may use funds from the sale of its assets which are not subject to liens or encumbrances (the "Liquidation Fund") for the costs and expenses of its wind-down operations.

H. No later than twenty-four months following the Effective Date (the "Liquidation Fund Distribution Date"), the Reorganized Debtor shall distribute the remaining proceeds in the Liquidation Fund in accordance with the provisions of this Plan.

I. Following the Liquidation Fund Distribution Date and the payments of Distributions under the Plan, the Reorganized Debtor shall take appropriate actions to dissolve under the laws of the State of Utah.

**E.      Distributions**

The Reorganized Debtor or its designee shall make or cause to be made all distributions required under the Plan.   All distributions made under the Plan shall be made to holders of Allowed Claims as of the Distribution Record Date (a) if any such holder has filed a proof of claim, at the address of such holder as set forth in the proof of claim, or (b) if any such holder has not filed a proof of claim, at the last known address of such holder according to the Debtor's books and records.

Neither the Debtor nor the Reorganized Debtor shall have any obligation to recognize any purported transfer of a Claim after the Distribution Record Date, and will be entitled for all purposes relating to the Plan to recognize and deal only with those holders of Claims shown on the books of the Debtor as of the close of business on the Distribution Record Date.

1.      <u>Means of Cash Distributions.</u>

Payments made pursuant to the Plan shall be in lawful U.S. currency and by the means agreed to by the payor and the payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Reorganized Debtor shall determine.

2.      <u>No Distributions Pending Allowance.</u>

No payments or distributions shall be made with respect to any Claim to the extent such Claim is a Disputed Claim unless and until all objections to such Disputed Claim are withdrawn or overruled by the Bankruptcy Court and such Claim becomes an Allowed Claim.

3.      <u>Distributions after Allowance.</u>

Distributions shall be made as appropriate to the holder of any Disputed Claim that has become an Allowed Claim on the date such Disputed Claim becomes an Allowed Claim or as soon thereafter as practicable.   Such distributions shall be based upon the cumulative

distributions that would have been made to the holder of such Claim under the Plan if the Disputed Claim had been an Allowed Claim as of the Effective Date and shall not be limited by the amounts reserved with respect to such Disputed Claim to the extent that additional amounts are available therefore, but only to the extent that such additional amounts have not yet been distributed to holders of Allowed Claims.  No interest shall be payable to holders of Disputed Claims.

4.      Setoff Rights.

The Reorganized Debtor may, but shall not be required to, set off against or recoup from any Claim and the distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against the holder of such Claim; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim against such holder.

5.      Unclaimed Distributions.

If a distribution made by the Reorganized Debtor pursuant to the Plan is returned as undeliverable, or the holder has failed to deposit of negotiate the applicable check within 180 days of issuance (collectively, "Unclaimed Distributions"), the distribution shall be held by the Reorganized Debtor.  The Reorganized Debtor shall make reasonable efforts to determine the then-current address of such holder, and no further distributions shall be made to such holder unless and until the Reorganized Debtor determines or is notified of such holder's current address, at which time all missed distributions shall be made, without interest; provided, however, that such distributions shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code if not claimed by 180 days after the distribution was initially attempted, notwithstanding any federal or state escheat laws to the contrary. After such date, (a) all rights to

Cash, or other distributions shall be forfeited and such Cash or other property shall be revested in the Reorganized Debtor and the claim of such holder to such Cash or other distribution pursuant to the Plan shall be discharged and forever barred, and (b) all rights to such distributions shall be forfeited.

6.      <u>Minimum Cash Distributions.</u>

No payment of less than fifty dollars ($50) shall be made to any holder of an Allowed Claim unless requested in writing to the Reorganized Debtor prior to 30 days prior to the Liquidation Fund Distribution Date.  If no such request is timely received, all Cash attributable to such holders shall be treated under the Plan as Unclaimed Distributions.

**F.      Claims**

**1.      Claims Administration**

Unless otherwise ordered by the Bankruptcy Court, from and after the Effective Date, the sole and exclusive authority to administer, dispute, object to, compromise or otherwise resolve Claims shall belong to the Reorganized Debtor.   Subject to the foregoing, the Reorganized Debtor may dispute any Claim evidenced by a proof of claim or request for payment Filed with the Bankruptcy Court by Filing and serving on the holder thereof an objection in accordance with the Bankruptcy Code, the Bankruptcy Rules or a Final Order of the Bankruptcy Court.  Except as otherwise provided herein, if the Reorganized Debtor disputes any Claim for which a proof of claim has been filed, the Reorganized Debtor must File and serve on the holder of the Disputed Claim an objection on or before 120 days following the Effective Date (the "Claims Objection Deadline.")

### 2. Estimation of Disputed Claims

The Debtor or Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim subject to estimation under section 502(c) of the Bankruptcy Code, including any Disputed Claim for taxes to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code at any time during litigation concerning any objection to the Claim. Disputed Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism set forth in the Plan or approved by the Bankruptcy Court.

### 3. Interest on Claims.

Unless specifically provided in the Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the respective Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon.

### 4. Voting and Objections.

Failure by the Debtor or the Reorganized Debtor to object to or examine any Claim or Interest for purposes of voting in favor of or against the Plan shall not be deemed a waiver of the Debtor's, the Reorganized Debtor or any other Person's rights to object to, or re-examine, such Claim or Interest, in whole or in part, for purposes of allowance or distribution.

### G.    Executory Contracts

#### 1.    Rejection of Contracts and Leases

All executory contracts and unexpired leases that exist between or among the Debtor and any other Person shall be deemed rejected by operation of this Plan pursuant to section 365(a) of the Bankruptcy Code on the Effective Date, except for any such contract or lease (a) that has been assumed or rejected, or renegotiated and assumed on modified terms, pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (b) that has been entered into by the Debtor during the pendency of the Chapter 11 Case in the ordinary course of business or pursuant to an order of the Bankruptcy Court, (c) that is the subject of a motion to assume or reject, or a motion to approve renegotiated terms and to assume or reject on such terms, filed prior to the Effective Date, or (d) that is specifically treated otherwise in the Plan or in the Confirmation Order.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of executory contracts and unexpired leases as provided for herein.

#### 2.    Bar to Rejection Damages

Claims arising from the rejection of the Debtor's executory contracts or unexpired leases shall be treated as General Unsecured Claims. The holder thereof shall file a proof of claim by the date fixed in such rejection order or, if no deadline is specified in such order, within thirty (30) days of the effective date of the rejection of such contract or lease or shall be forever barred. Objections to such Claims shall be filed and served by later of sixty days of the effective date of the rejection or the Claims Objection Deadline.

### 3.      Assumption of Specific Contracts and Leases

Notwithstanding anything to the contrary in the Plan, not less than ten (10) days prior to

the Confirmation Hearing, the Debtor shall provide a list of executory contracts and unexpired

leases being assumed by operation of the Plan pursuant to section 365(a) of the Bankruptcy

Code.

### 4.      Insurance Policies

Notwithstanding anything to the contrary contained in the Plan, the Debtor's insurance

policies and any agreements, documents or instruments relating thereto shall be deemed to be

and treated as though they are executory contracts, and shall be assumed as of the Effective Date

by operation of the Plan pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code.

Nothing contained herein shall constitute or be deemed a waiver of any Cause of Action against

any insurer or any other Person (except as otherwise provided herein) under any of the Debtor's

policies of insurance or otherwise, or in any way to limit the obligation of such insurers to

defend, indemnify, and/or hold harmless the Debtor under the terms of any insurance policy

issued to the Debtor.

### 5.      Cure of Defaults

On the Effective Date, the Debtor and the Reorganized Debtor shall (a) cure or provide

adequate assurance that they will cure any and all undisputed defaults under any executory

contract or unexpired lease assumed pursuant to the Plan and (b) compensate or provide

adequate assurance that they will promptly compensate the other parties to such executory

contract or unexpired lease for the agreed amount of any actual pecuniary loss to such party

resulting from such undisputed default in accordance with section 365(b)(1) of the Bankruptcy

Code.  In the event that the Debtor disputes the existence of a default, or the nature, extent or

amount of any required cure, adequate assurance or compensation, the Debtor's and the Reorganized Debtor's obligations under section 365(b) of the Bankruptcy Code shall be determined by a Final Order, and any such obligations shall be performed by the Reorganized Debtor unless otherwise provided in such Final Order.

### 6.   **Modification and Amendments**

The Debtor may alter, amend or modify the Plan in accordance with section 1127(a) of the Bankruptcy Code at any time prior to Confirmation.  On and after the Confirmation Date but prior to substantial consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or any orders of court.

### 7.   **Revocation, Withdrawal or Non-Consummation**

The Debtor shall have the right to revoke or withdraw the Plan at any time prior to the Effective Date.  If revoked or withdrawn prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Class), the assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed or to be executed pursuant to the Plan shall be null and void and of no effect.  In such event, nothing contained herein, and no acts taken to implement the Plan, shall be deemed to

constitute a waiver or release of any Claims against the Debtor or any other Person or any claims by the Debtor or the Debtor against any Person, to prejudice in any manner the rights of the Debtor, the Debtor or any Person in any further proceedings involving the Debtor or to constitute an admission of any sort by the Debtor or any other Person.

**H.     Confirmation**

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

**1.   Voting Procedures and Solicitation of Votes**

The voting procedures and the procedures governing the solicitation of votes are described above.

**2.   Confirmation**

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the requirements of section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of a plan are:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtor has complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised by the Debtor or by a person acquiring property under the plan for services or for costs and expenses in, or in connection with, the chapter 11 case, or in connection with the plan and incident to the chapter 11 case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the plan is reasonable or if such

payment is to be fixed after confirmation of the plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

- The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as member, director or officer of the Reorganized Debtor, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the Reorganized Debtor, and the nature of any compensation for such insider.

- With respect to each Class of Claims or Interests, each holder of an impaired Claim or Interest has either accepted the plan or will receive or retain under the Plan on account of such holder's Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the debtors were liquidated on the effective date under Chapter 7 of the Bankruptcy Code.  See discussion of "Best Interests Test" below.

- Each Class of Claims or Interest has either accepted the Plan or is not impaired under the Plan.

- Except to the extent that the holder of a particular Claim has agreed to different favorable treatment of such Claim, the Plan provides that administrative expense claims and priority tax Claims will be paid in full as required by the Bankruptcy Code.

- At least one Class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such Class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor or any successor to the debtors under the plan, unless such liquidation or reorganization is proposed in the plan. See discussion of "feasibility," below.

### (a)    Acceptance

Classes 1, 2, 3 and 12 of the Plan are unimpaired under the Plan and are not entitled to vote to accept or reject the Plan. Classes 4 through 11, 13 and 14 are Impaired and will be entitled to vote to accept or reject the Plan.

### (b)    Feasibility

Section 1129(a)(11) of the Bankruptcy Code provides that a chapter 11 plan may be confirmed only if the Bankruptcy Court finds that the Plan is feasible. A feasible plan is one that will not lead to a need for further reorganization or liquidation of the Debtor, unless such reorganization or liquidation is proposed in the Plan. The Debtor believes that the Plan satisfies the feasibility requirement imposed by the Bankruptcy Code, as described in more detail in the Debtors' projected financial information contained in Exhibit "B".

### (c)    Best Interests Test

With respect to each impaired Class of Claims and Interests, confirmation of the Plan requires that each holder of a Claim or Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the

value such holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. This requirement often is referred to as the "best interests test".

The starting point in determining whether the Plan meets the best interests test is a determination of the amount of proceeds that would be generated from the liquidation of the Debtor's assets in a Chapter 7 liquidation case. These proceeds must then be reduced by the costs of such liquidation, including costs incurred during the chapter 11 cases and allowed under chapter 7 of the Bankruptcy Code (such as professionals' fees and expenses), a trustee's fees, and the fees and expenses of professionals retained by a trustee. The potential chapter 7 liquidation distribution in respect of each Class must be reduced further by costs imposed by the delay caused by conversion to chapter 7. In addition, inefficiencies in the claims resolution process in a chapter 7 would negatively impact the recoveries of creditors. The net present value of a hypothetical chapter 7 liquidation distribution in respect of an impaired Class is then compared to the recovery provided for in the Plan for that Class. The liquidation analysis is set forth on Exhibit "C".

### (d)    Cramdown

The Debtor will seek to confirm the Plan notwithstanding the rejection by any of the impaired Classes. To obtain nonconsensual confirmation of the Plan, it must be demonstrated to the Bankruptcy Court that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired, nonaccepting Class. The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable." The Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors and equity holders, as follows:

(i)    <u>Secured Creditors</u>.  Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

(ii)    <u>Unsecured Creditors</u>.  Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting Class will not receive any property under the plan.  (This provision is often referred to as the "absolute priority rule.")

(iii)    <u>Interests</u>.  Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting Class will not receive or retain any property under the plan.

A plan does not "discriminate unfairly" with respect to a nonaccepting Class if the value of the cash and/or securities to be distributed to the nonaccepting Class is equal to, or otherwise fair when compared to, the value of the distributions to other Classes whose legal rights are the same as those of the nonaccepting Class.

### 3.   Conditions to Confirmation

Except as expressly waived pursuant to the Plan, the Plan shall be null and void and have no force or effect unless the Court shall have entered the Confirmation Order, which shall be a Final Order and which order shall:

(a)   confirm the Plan without modification except as modified by the Debtor in accordance herewith;

(b)   be in form and substance acceptable to the Debtor;

(c)   declare that the provisions of the Confirmation Order shall not be severable and are mutually dependent;

(d)   declare that the transfer of the Debtor's assets, including the transfer of ownership of all remaining real property to the Reorganized Debtor shall be free from any and all recordation and transfer taxes; and

(e)   declare that the Debtor has solicited acceptances of the Plan in good faith and in compliance with the Bankruptcy Code and that the Debtor and each of its affiliates, agents, directors, officers, employees, advisors and attorneys have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and therefore are not liable for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan.

### 4.   Conditions to Effective Date

Except as expressly waived pursuant to the Debtor, a condition precedent to the Effective Date is the entry of the Confirmation Order, in form and substance acceptable to the Debtor, and no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall be pending, _provided_ that, if an appeal of the

Confirmation Order or any other such order is Filed but no stay is granted in connection therewith, the Debtor may elect to permit the Effective Date to occur notwithstanding the pendency of an appeal.

### 5. Waiver of Conditions

All of the conditions for confirmation may be waived by the Debtor without any notice to parties in interest or the Bankruptcy Court and without a hearing, unless waiver is prohibited by law.

### 6. Effect of Failure of Conditions

In the event that the conditions for confirmation have not been satisfied or waived on or before sixty (60) days after the Confirmation Date, then upon written notification filed by the Debtor with the Bankruptcy Court, (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtor and all holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) all obligations of the Debtor with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims against the Debtor or any claims of the Debtor against any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

### I.     Federal Income Tax Consequences

The following discussion summarizes certain federal income tax consequences of the implementation of the Plan to the Debtor and certain holders of Claims and Interests.

The following summary is based on the Internal Revenue Code of 1986, as amended, (the "Tax Code") and Treasury regulations promulgated and proposed thereunder (the

"Treasury Regulations"), judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service (the "IRS"). Changes or new interpretations of these rules may have retroactive effect and could significantly affect the federal income tax consequences described below.

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Debtor has not requested an opinion of counsel with respect to any of the tax aspects of the Plan. In addition, the Debtor has not requested a ruling from the IRS concerning the federal income tax consequences of the Plan, and the consummation of the Plan is not conditioned upon the issuance of any such ruling. Thus, no assurance can be given as to the interpretation that the IRS or a court of law will adopt.

This summary does not address state, local or foreign income or other tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign persons, broker- dealers, banks, mutual funds, insurance companies, financial institutions, thrifts, small business investment companies, regulated investment companies, real estate investment trusts and tax-exempt entities).

This summary also assumes that the various third-party debt and other arrangements to which the Debtors are a party will be respected for federal income tax purposes in accordance with their form, and that Claims and Interests are held as capital assets.

Accordingly, the following summary is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to a holder of a Claim or Interest.

**IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY NOTIFIED THAT: (I) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER FEDERAL, STATE OR LOCAL TAX LAWS, (II) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS DISCUSSED HEREIN, AND (III) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

1.      **Consequences to Interest Holders**

     a.      **Limited liability companies**

The Debtor is a limited liability company that is taxed as a partnership for U.S. federal income tax purposes. A partnership is not itself a taxpaying entity for U.S. federal income tax purposes. A partnership's income or loss is allocated among its partners, who are required to report the income or loss allocated to them on their own tax returns. A partner's tax basis of the interest in the partnership is initially equal to the amount of cash and the adjusted tax basis of property contributed to the partnership.

A partner's tax basis increases for additional contributions and the partner's share of taxable and tax-exempt income and gain, and decreases for distributions and the partner's share of losses. An increase in a partner's share of partnership liabilities or a partner's assumption of partnership liabilities is treated as a cash contribution to the partnership that

61

increases tax basis, and a decrease in a partner's share of partnership liabilities or the assumption by the partnership of a partner's liabilities decreases tax basis, but not below zero. Cash distributions, including a decrease in a partner's share of partnership liabilities, in excess of tax basis is taxable and generally treated as gain from the sale of a partnership interest. Generally, a partner is not allowed to deduct his or her share of partnership losses for the year in excess of the adjusted tax basis of his or her interest in the partnership.  Any excess is allowed in any subsequent year in which a partner's adjusted tax basis increases.  A partner shares partnership recourse liabilities to the extent the partner bears the economic risk of loss with respect to the liabilities, i.e., based on a hypothetical partnership liquidation at a time when the partnership has no assets, after taking into account any rights of contribution or reimbursement from other partners or third parties that are related to other partners.

### b.      Cancellation of Indebtedness Income

If a debt is forgiven or reduced, cancellation of indebtedness income ("COD Income") may result.  Whether COD Income is realized is made at the partnership level.  If realized, such COD Income is then allocated among the partners.  The tax treatment of that income will be determined with respect to each partner at the partner level.

Generally, the amount of COD Income is the difference between (i) adjusted issue price of the old indebtedness less (ii) the sum of the amount of cash paid and the issue price of the new debt and (iii) the fair market value of any new consideration given in satisfaction of the old indebtedness.  The adjusted issue price of old debt is typically the outstanding principal balance plus any previously accrued interest that has been deducted for Federal Income tax purposes.  It should be noted that when income is realized from the discharge of indebtedness to the extent the payment of the debt by the tax payer would have given rise to a deduction.

## 2.      Consequences to Holders of Secured Claims

The Claims and Classes 4 through 11 will receive modified loans.  "Significant" modifications of loans have tax implications.  The regulations under §1001 of the Tax Code sets forth rules for determining whether modifications are "significant."  Modification is significant if there is a change in the yield of the instrument exceeding 25 basis points.  Alternatively, a significant modification will occur if the financial maturity of the debt instrument is extended and such extension exceeds the lesser of five years or 50 percent of the original term.

Under this analysis, the Claims and Classes 4 through 11 will have significantly modified loans.  A holder who receives a significantly modified loan will recognize gain, loss or income in an amount equal to the difference between the amount realized by the lender on the deemed exchange and the lender's tax basis in the old debt.  If neither the old debt nor the new debt is publicly traded, the amount realized by the lender will be equal to the original issue price of the new debt.  The lender's gain or loss will be ordinary capital depending upon the nature of the lender and its business activities and the intent on making the loan or acquiring the debt.  The holder of a modified loan will be required to include stated interest on the modified loan in income in accordance with the holder's regular method of accounting to the extent such stated interest is "qualified stated interest."   All stated interest on the modified loan that is unconditionally payable in cash or property at least annually should be generally treated as "qualified stated interest."

### a.      Holders of Allowed Class 13 General Unsecured Claims

Each holder of an Allowed Class 13 General Unsecured Claim will recognize gain or loss in an amount equal to the difference between (a) the "amount realized" by the holder in satisfaction of the Claim (other than any Claim for accrued but unpaid interest) and (b) the

holder's adjusted tax basis in the Claim (other than any Claim for accrued by unpaid interest). The "amount realized" by a holder will equal the sum of any Cash received by the holder upon the Effective Date and/or the fair market value of the holder's right to receive subsequent distributions pursuant to the Plan. The character of any gain or loss recognized as long-term or short-term capital gain or loss or as ordinary income or loss recognized by a holder of an Allowed Class 13 General Unsecured Claim will be determined by a number of factors, including, among others the tax status of the holder, whether the Claim constitutes a capital asset in the hands of the holder and how long it has been held, whether the Claim was purchased at a discount, and whether and to what extent the holder had previously claimed a bad debt deduction in respect of such Claim.

### b.      Holders of Interests

In general, holders of Allowed Interests in the Debtor should recognize gain or loss in an amount equal to the difference between (x) the sum of the amount of Cash and the fair market value of other property, if any, received in respect of their Interest pursuant to the Plan (whether on or after the Effective Date), and (y) their adjusted tax basis in their Interest. Such gain or loss generally will be capital gain or loss, and will be long-term if their Interest shall have been held for at least one year at the Effective Date.

### 3.      Accrued but Unpaid Interest

A portion of the consideration received by holders of Claims may be attributable to accrued but unpaid interest on such Claims. Such amount should be taxable to that holder as interest income if such accrued interest has not been previously included in the holder's gross income for U.S. federal income tax purposes. Conversely, it is possible that a holder of Claims may be able to recognize a deductible loss (or, possibly, a write-off against a reserve

for worthless debts) to the extent that any accrued interest on the Claims was previously included in the U.S. holder's gross income but was not paid in full by the Debtor. The character of such loss may be ordinary rather than capital, but the tax law is unclear on this issue.

**4.    Information Reporting and Withholding**

All distributions to holders of Allowed Claims or Interests under the Plan are subject to any applicable withholding obligations (including employment tax withholding).    Under federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then-applicable  rate.    Backup withholding generally applies if the holder:  (i) fails to furnish its social security number or other taxpayer identification number ("TIN"); (ii) furnishes an incorrect TIN; (iii) fails properly to report interest or dividends; or (iv) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is such holder's correct number and that such holder is a United States person that is not subject to backup withholding.    Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax.    Certain persons are exempt from backup withholding, including,  in certain circumstances, corporations and financial institutions.

In addition, from an information reporting perspective, applicable Treasury Regulations generally require disclosure by a taxpayer on its federal income tax return of certain types of transactions in which the taxpayer participated,  including,  among others,  certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds.    Holders are urged to consult their tax advisors regarding these regulations and whether the transactions

contemplated by the Plan would be subject to these Treasury Regulations and require disclosure on the holders' federal income tax returns.

The foregoing summary has been provided for informational purposes only. All holders of Claims and Interests are urged to consult their tax advisors concerning the federal, state, local, and foreign tax consequences applicable under the Plan.

**J.     Risk Factors**

**HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION OR INVESTING IN ASSETS OF THE DEBTOR.**

**1.     Certain Bankruptcy Considerations**

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate a resolicitation of votes. Finally, there can be no assurance that any or all of the conditions to the Effective Date of the Plan will be met (or waived). Accordingly, even if the Plan is confirmed by the Bankruptcy Court, there can be no assurance that the Plan will be consummated.

### 2.    Material United States Federal Income Tax Considerations

THERE ARE A NUMBER OF MATERIAL UNITED STATES FEDERAL INCOME TAX CONSIDERATIONS, RISKS AND UNCERTAINTIES ASSOCIATED WITH CONSUMMATION OF THE PLAN. INTERESTED PARTIES SHOULD READ CAREFULLY THE DISCUSSION SET FORTH ABOVE, ENTITLED "CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN" FOR A DISCUSSION OF THE MATERIAL UNITED STATES FEDERAL INCOME TAX CONSEQUENCES AND RISKS FOR THE DEBTOR AND FOR HOLDERS OF CLAIMS AND INTERESTS THAT ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN RESULTING FROM THE TRANSACTIONS OCCURRING IN CONNECTION WITH THE PLAN.

### K.    Alternatives to Plan

If the Plan is not confirmed and consummated, the Debtor's alternatives include (i) liquidation under chapter 7 of the Bankruptcy Code and (ii) confirmation of an alternative plan or plans of reorganization or liquidation.

### 1.    Liquidation Under Chapter 7

If the Plan or any other chapter 11 plan for the Debtor cannot be confirmed under section 1129(a) and (b) of the Bankruptcy Code, this chapter 11 case may be converted to a case under chapter 7 of the Bankruptcy Code, in which case a trustee would be elected or appointed to liquidate any remaining assets of the Debtor for distribution to creditors pursuant to chapter 7 of the Bankruptcy Code. Attached as Exhibit "C" is a liquidation analysis demonstrating this option.

### 2.     Alternative Chapter 11 Plan

If the Plan is not confirmed, the Debtor, or any other party in interest, may attempt to formulate an alternative chapter 11 plan, which might provide for the liquidation of the Debtor's assets other than as provided by the Plan.  Any attempt to formulate an alternative chapter 11 plan would unnecessarily delay creditors' receipt of distributions yet to be made and, due to the incurrence of additional administrative expenses during such period of delay, may provide for smaller distributions to holders of Allowed Unsecured Claims and Interests than are currently provided for under the Plan.  Accordingly, the Debtor believes that the Plan will enable all creditors to realize the greatest possible recovery on their respective Claims or Interests with the least delay.

## V.     CONCLUSIONS AND RECOMMENDATION

The Debtor believes that confirmation and implementation of the Plan is preferable to any of the alternatives described above because it will provide the greatest recoveries to holders of Claims and Interests.  Other alternatives would involve significant delay, uncertainty and substantial additional administrative costs.  The Debtor urges holders of impaired Claims and Interests entitled to vote on the Plan to accept the Plan and to evidence such acceptance by returning their ballots so that they will be received no later than

4:30 p.m., Mountain Time, on _____, 2010.

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

DATED this 6th day of October, 2010.

Wolf Creek Properties, LC
Debtor and Debtor in Possession


By:   / s/   Rob Thomas


Miller Guymon, P.C.


/s/ Blake D. Miller
Blake D. Miller
James W. Anderson
165 South Regent Street
Salt Lake City, Utah 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601

Attorneys for the Debtors