Blake D. Miller (4090)
James W. Anderson (9829)
**MILLER GUYMON, P.C.**
165 Regent Street
Salt Lake City, Utah 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
e-mail: miller@millerguymon.com
          anderson@millerguymon.com

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **In re:**<br><br>**WOLF CREEK PROPERTIES, LC**<br><br>Debtor. | **Bankruptcy Case No. 10-27816**<br>**Chapter 11**<br><br>**Judge Joel T. Marker**<br><br>**(Filed Electronically)** |

### MOTION TO OBTAIN POST-PETITION FINANCING UNDER SECTION 364(c)

Wolf Creek Properties, LC ("Debtor") pursuant to 11 U.S.C. § 364(c), Fed. R. Bankr. P. 4001(c), and Local Bankruptcy Rule 4001-2 seeks entry of an order, in the form attached as Exhibit "A", authorizing and approving the Debtor to enter into the loan transaction (the "Loan") proposed in the Promissory Note, Security Agreement, and Deed of Trust, copies of which are attached hereto as Exhibit "B" (the "Loan Documents"). In support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## BACKGROUND

2.  On June 9, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3.  The Debtor is a Utah limited liability company with its principal place of business in Eden, Utah.  Among other assets, the Debtor owns the real property which comprises the Wolf Creek golf course and Wolf Mountain ski resort facilities.

4.  The Debtor has a number of secured and unsecured creditors, and is continuing to operate its resort business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

5.  The Debtor receives income from operations of its golf and ski resort properties.  As such, the majority of the Debtor's income is received in the summer and winter seasons.  The fall and spring seasons are referred to as "shoulder seasons", when income from resort operations is substantially reduced.  The Debtor is entering this fall's shoulder season with insufficient cash reserves to cover its operations until it starts to receive significant income from ski operations.  Therefore, the Debtor is in need of an immediate and short-term loan to bridge its cash needs to the ski season and the water company sales.  In addition, the Debtor has arranged the sale of two of its subsidiary water companies that will bring substantial cash into the estate.  Bankruptcy

Court approval of that sale will be sought. It is anticipated that this sale would close mid December, 2010.

## LOAN TERMS

6. In accordance with Rule 4001(c), a summary of the Loan terms is set forth below. Reference is made to the actual Loan Documents for specific details. To the extent there is any discrepancy between the following summary and the Loan Documents, the Loan Documents shall control. Capitalized terms not defined herein have the meaning ascribed in the Loan Documents.

    a. **Parties.** The Lender is two parties, Lowell Peterson and KBC Leasing, LLC, and the Borrower is the Debtor. Mr. Peterson is a current board member of the Debtor, and a pre-petition creditor, and will be funding $100,000.00 of the Loan. KBC Leasing, LLC is a pre-petition creditor and will be funding $250,000.00 of the Loan.

    b. **Amount.** The amount borrowed is $350,000.00, but the net amount received after payment of certain fees will approximate $333,500.00.

    c. **Interest and Fees.** Interest shall accrue at an annual rate of 18%. Upon funding the Loan, Borrower will then remit back to Lender an origination fee of $14,000.00. Borrower shall also pay Lender's attorneys' fees incurred in negotiating and preparing the Loan Documents, in an amount not to exceed $2,500.00. These fees shall be paid at the time of the Loan closing, and therefore reduce the Loan proceeds received by the Debtor. Any amount not paid by the Maturity Date shall bear interest at a default rate of 21%.

    d. **Payments.** No payments shall be due prior to the Maturity Date. On the Maturity Date, all of the outstanding principal and accrued interest shall be due and payable. In the event that the assets of either Wolf Creek Water Company, Inc. or Wolf Creek Water Conservancy, Inc. are sold, but not the other, then only 50% of the amount then due under the Loan shall be payable at the closing of the first of such sales. If both such sales occur simultaneously, then such sale date is also the Maturity Date, as explained more fully below.

    e. **Term and Maturity Date.** The maximum loan term is six (6) months. However, the Maturity Date shall be deemed to be the earlier of the following events: (i) the last closing date for the sales, if any, of all or substantially all of the assets of Wolf Creek Water Company, Inc. and Wolf Creek Water Conservancy, Inc.; (ii) the date stated

in the Borrower's Confirmed Plan of Reorganization for this Note to be repaid; or (iii) the date that is the six (6) month anniversary of the Effective Date.

      f.    **Security.**  The Loan will be secured partially by a lien which is not otherwise subject to a lien, and partially by a lien which will be junior to existing liens. Pursuant to the Deed of Trust, the Debtor is granting Lender a second position lien against the parcel of real property commonly referred to in this case as the "Balloon Field Parcel", which is approximately 64 acres of undeveloped property located close to the golf course.  The Debtor is also granting Lender is first position lien against two smaller pieces of property, of approximately 3 acres in total size.  As an accommodation to the Debtor, and as more fully detailed in the Security Agreement, Wolf Creek Water Company, Inc. and Wolf Creek Water Conservancy, Inc. are granting Lender a second position security interest in its equipment and accounts receivable.  These water companies are both wholly owned by Wolf Management, Inc., which is wholly owned by the Debtor.  These two water companies are also in the final stages of negotiation for their sale to a third party, and this is the sale that is discussed as a triggering event for the Maturity Date under the Loan.

7.    Pursuant to Rule 4001(c) and Local Rule 4001-2, the Debtor states that no extraordinary relief is sought in this Motion or the proposed Order of the kind discussed in these rules, except for the granting of a lien under § 364(c)(2) and (3).

## APPLICABLE AUTHORITY

8.    11 U.S.C. § 364(c) allows the Court, after notice and a hearing, to authorize the Debtor to obtain credit or incur debt "[i]f the [Debtor] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense."  The security allowed under this section and sought by this Motion is set forth in 11 U.S.C. §364(c)(2) and (3), being a lien "on property of the estate that is not otherwise subject to a lien", and "a junior lien on property of the estate this is subject to a lien."

9.    The Debtor has conducted extensive negotiations with multiple lending parties and has not been able to obtain unsecured financing.  As a result of these efforts, three loan proposals were submitted to the Debtor.  All three required a security interest in portions of the

4

Debtor's land, and the assets of the above mentioned water companies.[1]  The Lien proposed to be granted by this Motion and Loan Documents is a first position lien on two unencumbered parcels, and second position lien on the Balloon Field Parcel and the assets of the water companies.  As a result, no secured creditor is being primed in any fashion.

10.     The Balloon Field Parcel has a first position lien in favor of the Macfarlane Family Trust, in the original principal amount of $250,000.00.  The water company assets are encumbered by a first position lien held by the State of Utah through the Board of Water Resources.  The Debtor is not proposing to provide adequate protection to any of these existing secured creditors because the Debtor believes these senior secured creditors have adequate protection in the equity of their respective collateral.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court authorize and approv the Debtor to enter into the Loan, authorizing the Debtor to complete any and all tasks necessary to effectuate and close the Loan, pursuant to the Loan Documents, and that the Order be effective upon entry pursuant to Rule 6004(h).

DATED this 8th day of October, 2010.

MILLER GUYMON, P.C.

/s/ James W. Anderson
Blake D. Miller
James W. Anderson

Attorneys for the Debtor

---

[1] One proposal required a priming lien on the Debtor's real property.  The Debtor declined this proposal.

5