Michael R. Johnson (7070)
Brent D. Wride (5163)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
E-mail:  mjohnson@rqn.com
         bwride@rqn.com

*Proposed Counsel for the Unsecured Creditors Committee*

_____

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| In re: | **Bankruptcy Case No 10-27816**<br>Chapter 11 |
|---|---|
| WOLF CREEK PROPERTIES, LC | Honorable Joel T. Marker |
| Debtor-in-Possession | [Filed Electronically] |

**OBJECTION OF THE UNSECURED CREDITORS COMMITTEE TO THE DEBTOR'S MOTION TO OBTAIN POST-PETITION FINANCING UNDER SECTION 364(c)**
_____

The Official Committee (the "**Committee**") of the Unsecured Creditors of Wolf Creek Properties, LC, by and through its proposed counsel, Ray Quinney & Nebeker PC, hereby objects to the Debtor's *Motion to Obtain Post-Petition Financing Under Section 364(c),* filed October 8, 2010 (the "**Motion**") [Doc. 105], and asks that the Motion be denied for the reasons set forth herein.

**OBJECTION**

The Committee objects to the Debtor's motion to obtain a short-term loan on the following grounds:

1.      First, the Committee does not believe that the Debtor has demonstrated the need to borrow $350,000 at this time, and the proposed terms of the loan, as set forth in the Motion, appears to not be in the best interests of the Debtor and its creditors.  The Debtor indicates in its Motion that it is in need of short-term financing to meet expenses during the fall "shoulder season."  However, it is the Committee's understanding that the Debtor, which operates a ski resort, should experience very significant revenue during the month of November from the sale of season ski passes.  This revenue should be more than sufficient to meet reasonable expenses until mid-December when, according to the Debtor, the sale of its two water companies will close.  Moreover, inadequate disclosure has been provided to the Committee about the current cash reserves and future anticipated cash receipts of the Debtor from season ski passes and from other sources.

2.      Next, the terms of the short-term loan are very unfavorable to the Debtor, and this will have a negative impact on the unsecured creditors of the estate.  The risk of the proposed loan to the lenders would be limited—the loan is heavily secured and its maximum term is just six months.  Nevertheless, the interest rate on the loan would be 18% (with a default rate of 21%).  In addition, the proposed loan would require a 4% origination fee, which would be paid on the maximum amount of the loan ($350,000) even if only a tiny portion of the available funds

2

was actually borrowed. Furthermore, the Debtor would have to pay the lenders' legal expenses. Finally, the Debtor proposes to secure the loan with assets that otherwise would be available to unsecured creditors, including currently unencumbered lots and also a lien on the Debtor's equity in other land and in the water companies themselves. While the Committee understands the difficulties that a debtor faces in obtaining DIP financing, the Committee believes that the terms of the current proposal are too unfavorable to be approved by the Court and, in any event, the Motion is devoid of any detail about the Debtor's efforts to obtain financing on more favorable terms.

3. The Debtor's Motion does not adequately explain what efforts the Debtor has made to obtain a better deal. The Motion states that the Debtor obtained three proposals. The Committee has requested copies of those proposals, but it has not yet received them, and it therefore cannot determine whether the current proposal (which comes from an insider and a creditor of the estate) is truly in the best interests of the unsecured creditors of the estate. Moreover, what is the universe of potential lending sources that the Debtor consulted?

4. The Committee is concerned that, as stated in the previous paragraph, the proposed lenders are (1) an insider of the Debtor, and (2) an unsecured creditor of the Debtor who would obtain a significant security interest in the Debtor's unencumbered and/or underencumbered assets as a result of the proposed loan. In other words, the value that the Debtor proposes to give away as security for this loan is value that otherwise would inure to the benefit of unsecured creditors. The Committee believes that under these circumstances, far greater information and detail should be provided than the Debtor provides in its Motion. *See*

*Sinclair v. Barr (In re Mid-Town Produce Terminal, Inc.)*, ("[B]ecause there is incentive and opportunity to take advantage, dominant shareholders and other insiders' loans in a bankruptcy situation are subject to special scrutiny.").

5. The proposed loan would encumber valuable property of the estate that currently provides the only substantial source for repayment of unsecured creditors. The Debtor does not provide any information in its Motion concerning the value of the Balloon Field Parcel. However, in its schedules the Debtor indicates that the value of the Balloon Field Parcel is $2,617,997. According to the Motion, there is a first position lien on the property in the amount of $250,000. This means that the Debtor may have over $2 million in equity in that parcel of property alone. Therefore, if the proposed lenders were granted nothing more than a second-position lien on the Balloon Field Parcel, they would be vastly oversecured.

6. Despite this fact, the Debtor proposes to also provide the lenders with a first-position lien on two parcels that are unencumbered. This is not in the interest of unsecured creditors, as this is value that should be given to the unsecured creditors in this case. Furthermore, the Debtor proposes to give the lenders a second position lien on all of the assets of the water companies. Again, this is not in the interest of unsecured creditors because, along with the unencumbered real property, the assets of the water companies may be the only substantial assets to which unsecured creditors can currently look for payment. The Court should not approve encumbering these assets in a situation where the proposed lenders would likely be vastly oversecured.

7.      Finally, the Committee is concerned about the Debtor's overall plan in general. The Debtor wants to pledge equity that would otherwise be available to pay unsecured creditors as a bridge for some immediate cash and then sell the water companies and use the cash generated from that sale to operate for a year or so to see if conditions improve and the Debtor can sell its properties at a greater price.  The Committee is not convinced that conditions will improve, and the Debtor is basically proposing to have the unsecured creditors pay the cost of operating for another year and then liquidating anyway.  While the Debtor may be willing to gamble with the creditors' money in this fashion, the creditors certainly are not.

8.      In summary, in order to obtain approval of its Motion, the Debtor "must establish: (1) that [it is] unable to obtain credit otherwise; (2) that the transaction is within the Debtor['s] business judgment; and (3) that the interests of [other interested parties] are adequately protected." *In re Utah 7000, LLC*, 2008 Bankr. LEXIS 4276, at *4-5 (Bankr. D. Utah 2008).  At its base, this means that the Debtor must show "that 1) the financing arrangement is necessary to preserve assets of the estate, and 2) the arrangement is otherwise fair and reasonable." *In re Phase-I Molecular Toxicology, Inc.*, 285 B.R. 494,496 (Bankr. D.N.M. 2002) (citing *In re Crouse Group, Inc.*, 71 B.R. 544, 546 (Bankr. E.D. Pa. 1997)).  The Debtor bears the burden of proof to make such a showing.  *In re Premier Entertainment Biloxi LLC*, 2007 Bankr. LEXIS 3939, at *7 (Bankr. S.D. Miss. Feb. 2, 2007).  The Debtor has not met its burden, and the Motion should be denied.

BASED UPON THE FOREGOING, the Committee respectfully asks that the Motion be denied.

DATED this 28th day of October, 2010.

        RAY QUINNEY & NEBEKER P.C.

        /s/Brent D. Wride
        Brent D. Wride
        *Proposed Attorneys for the Unsecured Creditors Committee*

1108408

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of October, 2010 the foregoing was electronically filed and therefore served via ECF on the following:

- Gregory J. Adams    gadams@mbt-law.com
- James W. Anderson    anderson@mmglegal.com
- Kenneth L. Cannon    kcannon@djplaw.com, khughes@djplaw.com
- T. Edward Cundick    tec@princeyeates.com, christy@princeyeates.com;docket@princeyeates.com
- Kenyon D. Dove    kdove@smithknowles.com, dcouch@smithknowles.com
- Thomas J. Erbin    tje@princeyeates.com
- Mark R. Gaylord    gaylord@ballardspahr.com, goodalem@ballardspahr.com;saltlakedocketclerk@ballardspahr.com
- Danny C. Kelly    dckelly@stoel.com, docketclerk@stoel.com
- Peter J. Kuhn tr    Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov
- Blake D. Miller    miller@mmglegal.com
- Matthew L. Moncur    moncurm@ballardspahr.com, goodalem@ballardspahr.com;saltlakedocketclerk@ballardspahr.com
- Bentley R. Peay    brpeay@stoel.com
- Robert S. Prince    rprince@kmclaw.com, squilter@kmclaw.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Kim R. Wilson    bankruptcy_krw@scmlaw.com

I further certify that on the 28th day of October, 2010, a true and correct copy of the foregoing was served upon the following parties via first class mail, postage prepaid.

Laurie A. Cayton
Peter J. Kuhn
U.S. Trustees Office
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT 84111

Cushman & Wakefield of Colorado, Inc.
1675 W. Redstone Center Dr., Suite 225
Park City, UT 84098

Daniel M. Eliades
Forman Holt & Eliades LLC
80 Route 4 East--Suite 290
Paramus, NJ 07652

Jeffrey M. Heilbrun
P.O. Box 10305
Jackson, WY 83002

Read R. Hellewell
1800 Eagle Gate
60 East South Temple
Salt Lake City, UT 84111

Parr Brown Gee & Loveless
185 South State Street #800
Salt Lake City, UT  84111

/s/Alexis Gruninger

1108408