**The below described is SIGNED.**



**Dated: November 03, 2010** _____

JOEL T. MARKER
U.S. Bankruptcy Judge

PREPARED AND SUBMITTED BY:

Blake D. Miller (4090)
James W. Anderson (9829)
**MILLER GUYMON, P.C.**
165 Regent Street
Salt Lake City, Utah 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
e-mail: miller@millerguymon.com
        anderson@millerguymon.com

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| In re:                          | Bankruptcy Case No. 10-27816 |
|                                 | Chapter 11 |
| WOLF CREEK PROPERTIES, LC       | |
|                                 | Honorable Joel T. Marker |
| Debtor.                         | |
|                                 | (Filed Electronically) |

## ORDER GRANTING MOTION TO OBTAIN POST-PETITION FINANCING UNDER SECTION 364(c)

A hearing was held by the Court on November 3, 2010, at 10:00 a.m., regarding the

Debtor's Motion to Obtain Post-Petition Financing under Section 364(c) (the "Motion"). At said

hearing, James W. Anderson of Miller Guymon, P.C. appeared on behalf of the Debtor, and

others noted their appearances on the record. The Court, having considered the Motion,

Filed: 11/03/10

adequate notice having been given, and good cause appearing therefore, hereby ORDERS as follows:

1. The Motion is Granted.

2. The Debtor is authorized to enter into the Loan Documents in the forms as attached hereto as Exhibit "A", and fulfill all of the Debtor's obligations therein.

3. The Lender is granted the liens provided for in the Security Agreement and Trust Deed attached to the Motion as part of the Loan Documents, which constitute liens under 11 U.S.C. § 364(c).

4. This order is effective upon entry pursuant to Rule 6004(h).

Dated this ___ day of _____, 2010.

------------------------ END OF ORDER ------------------------

## CLERK'S CERTIFICATE OF SERVICE

I hereby certify that on this ____ day of _____, 2010, I caused a true and

correct copy of the foregoing ORDER to be served upon the following individuals and entities,

in addition to all individuals and entities receiving notice via the Court's ECF System:

Peter J. Kuhn
Office of United States Trustee
405 S. Main St., #300
Salt Lake City, Utah 84111

Blake D. Miller
James W. Anderson
MILLER GUYMON, P.C.
165 S. Regent St.
Salt Lake City, Utah 84111

Read R. Hellewell
Robert S. Prince
KIRTON & McCONKIE
1800 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111

Danny C. Kelly
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, Utah 84111

Thomas J. Erbin
T. Edward Cundick
PRINCE, YEATES & GELDZAHLER
175 E. 400 S., #900
Salt Lake City, Utah 84111

Mark R. Gaylord
Matthew L. Moncur
BALLARD SPAHR LLP
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, Utah 84111-2221

Kim R. Wilson
SNOW, CHRISTENSEN &
MARTINEAU
10 Exchange Place, 11th Floor
P.O. Box 45000
Salt Lake City, Utah 84145

Daniel M. Eliades
FORMAN HOLT ELIADES &
RAVIN, LLC
80 Routh 4 East – Suite 290
Paramus, New Jersey 07652

Robert S. Prince
KIRTON & McCONKIE
Attorneys for JCA Properties, LLC
Eagle Gate Tower, Suite 1800
60 East South Temple
Salt Lake City, Utah 84111-1004

Gregory S. Moesinger
KIRTON & McCONKIE
Attorneys for Randy Marriott
Construction Company
Eagle Gate Tower, Suite 1800
60 East South Temple
Salt Lake City, Utah 84111-1004

Kenyon D. Dove
SMITH KNOWLES, P.C.
4723 Harrison Blvd., Suite 200
Ogden, Utah 84403

_____
Bankruptcy Clerk

# EXHIBIT "A"

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (the "**Agreement**"), is made and entered into effective on October __, 2010, by and between Wolf Creek Irrigation Company, Inc., a Utah corporation, and Wolf Creek Water Conservancy, Inc., a Utah non profit corporation (collectively, jointly and severally "**Debtor**"), and Lowell Peterson and KBC Leasing, LLC (collectively, "**Secured Party**"). References to "Debtor" herein shall mean each of the entities comprising the Debtor and both of the entities comprising the Debtor.

## R E C I T A L S:

A.      Debtor is a wholly owned subsidiary of Wolf Management, Inc., a Utah corporation, which is a wholly owned subsidiary of Wolf Creek Properties, LC, a Utah limited liability company ("**WCP**"), which is a debtor in possession in Bankruptcy No. 10-27816 pending in the United States Bankruptcy Court, District of Utah (the "**Bankruptcy Proceeding**").

B.      WCP is indebted to Secured Party under a promissory note of even date herewith in the principal amount of Three Hundred Fifty Thousand Dollars ($350,000.00) (the "**Note**").

C.      Debtor has agreed to grant to Secured Party a security interest in its assets as set forth below as an accommodation to WCP.

D.      Debtor hereby acknowledges and agrees that it will realize substantial benefits from the loan to WCP by Secured Party (and a satisfactory resolution of the Bankruptcy Proceeding which will be more likely because of such loan), which is evidenced by the Note, and that such loan would not be made to WCP but for Debtor's agreement to grant the security interests described herein.

NOW, THEREFORE, for good and valuable consideration, including Secured Party's loan to Debtor evidence by the Note, the receipt and legal sufficiency of which are hereby acknowledged, Secured Party and Debtor agree as follows:

ARTICLE I
DEFINITIONS

Unless the context clearly indicates otherwise, certain terms used in this Agreement shall have the meanings set forth below. To the extent not defined in this Article I, unless the context otherwise requires, all other terms contained in this Agreement shall have the meanings attributed to them in the Utah enactment of the Uniform Commercial Code, Chapter 9a, Title 70A, Utah Code Annotated (1953), as amended (the "**UCC**"), to the extent the same are used or defined therein.

"**Collateral**" means all right, title and interest of Debtor in and to the property and equipment used by Debtor in its business (excluding any real property), including, but not limited to, and together with: (1) all accounts generated from Debtor's business, including the marketing and sale of Debtor's products, including licensing fees, royalties, and other income; (2) chattel paper, including electronic chattel paper and tangible chattel paper; (3) deposit accounts (4) all general intangibles, of every kind and description, relating to Debtor's business, including payment intangibles, software, computer information, source codes, object codes, records and data, all existing and future customer lists, choses in action, claims (including claims for indemnification or breach of warranty), liens, books, and records; (5) furniture, fixtures equipment and any other personal property, including the items listed on Exhibit A attached hereto; (6) goods; (7) instruments, including promissory notes; (8) letters of credit; (9) supporting obligations; (10) all inventory, including raw materials, work in process, finished items and

materials used or consumed in the Debtor's business, including items that are returned, reclaimed or repossessed; (11) all supporting obligations relating to any of the foregoing; and (12) all cash and noncash proceeds and all products of any of the foregoing, including, without limitation, insurance proceeds.

"Event of Default" means the occurrence and continuance of any of the events specified in Section 5.1 of this Agreement.

"Loan Documents" means the Note and this Agreement.

"Obligations" means: (1) all indebtedness, obligations and liabilities of Debtor to Secured Party of every kind and description, arising out of or in any manner connected with the Note and, whether direct or indirect, secured or unsecured, joint or several, absolute or contingent, due or to become due, whether for payment or performance, now existing or hereafter arising, regardless of how the same arise or by what instrument, agreement or account they may be evidenced, or whether evidenced by any instrument, agreement or account, including, without limitation, all loans (including any loan by renewal or extension); (2) all interest, taxes, fees, charges, expenses and attorney fees chargeable to Debtor or incurred by Secured Party under this Agreement or the Note; (3) the repayment of all amounts that Secured Party may advance or spend to maintain or preserve any of the Collateral; (4) all amounts owed under any modification, renewal or extension of any of the foregoing obligations; and (5) any of the foregoing that arises after the filing of a petition in, by or against Debtor under the Bankruptcy Code, even if the obligations do not accrue because of the automatic stay under Bankruptcy Code § 362 or otherwise.

## ARTICLE II
## GRANT OF AND PERFECTION OF SECURITY INTEREST

2.1     Grant of Security Interest.   Debtor hereby pledges, assigns and transfers to Secured Party, and grants to Secured Party, a continuing junior position security interest in and to all of the Collateral, to secure the payment and performance of the Obligations and each and every obligation, liability and undertaking of Debtor under the Note and this Agreement, together with all subsequent advances made, expenditures authorized and additional payments provided for in the Note and this Agreement.

2.2     Perfection of Security Interest.   In connection with the perfection of the security interests granted in this Agreement:

(a)     Debtor authorizes Secured Party to file a financing statement describing the Collateral and any continuation statements necessary to maintain perfection of Secured Party's security interests hereunder.

(b)     Debtor shall have possession of the Collateral, except where expressly otherwise provided in this Agreement or where Secured Party chooses to perfect Secured Party's security interest by taking possession of the Collateral, in addition to or in lieu of the filing of a financing statement.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

Debtor hereby represents and warrants to Secured Party as follows:

2

3.1   <u>Ownership, Authority</u>.  Except for the collateral assignment and lien of the Utah Board of Water Resources and the lien of those certain other lenders constituting the PPM Lenders, on the assets of Debtor, which liens are hereby acknowledged and consented to by Secured Party, Debtor is the sole and exclusive owner of the entire and unencumbered right, title and interest in and to the Collateral, free and clear of any liens, changes and encumbrances (including, but not limited to, pledges, assignments, licenses, registered user agreements and covenants by Debtor not to sue third persons). Debtor possesses all requisite power and authority to execute and deliver this Agreement and to grant to Secured Party a valid security interest in the Collateral as provided in this Agreement.

3.2   <u>No Other Security Interests</u>.  Except as otherwise disclosed to Secured Party in writing prior to the date of this Agreement, no financing statement covering the Collateral (including pursuant to the security interests described in section 3.1 above), or any portion thereof, has been filed with any filing officer, and the Collateral is free from any adverse liens, security interests, rights of setoff, claims or encumbrances of any kind.

3.3   <u>Binding Documents</u>.  This Agreement and the Note have been duly authorized, executed, acknowledged and delivered, as appropriate, by Debtor.  This Agreement and the Note constitute valid and legally binding obligations of Debtor.

3.4   <u>Tradenames, Name Changes, Mergers</u>.  Except as previously disclosed to Secured Party in writing, Debtor utilizes no tradenames in the conduct of Debtor's business, has not changed its name, been the surviving entity in a merger, or acquired all or substantially all of the assets of any other business.

3.5   <u>Location of Collateral</u>.  All Collateral consisting of goods is in the possession of Debtor and is kept or maintained solely in the State of Utah.

3.6   <u>No Misrepresentations or Omissions</u>.  No representation, warranty or statement by Debtor contained in this Agreement or in the Note contains, or at the time of delivery shall contain, any untrue statement of material fact, or omits, or shall omit at the time of delivery, to state a material fact necessary to make it not misleading.

ARTICLE IV
GENERAL COVENANTS

4.1   <u>No Further Encumbrances</u>.  Debtor shall not further mortgage, pledge, grant or permit to exist a security interest in, or lien or encumbrance on, any of the Collateral, without the prior written consent of Secured Party.

4.2   <u>Right to Inspect</u>.  Debtor shall permit Secured Party, through Secured Party's authorized attorneys, accountants and representatives, at all reasonable times, to inspect and examine the books, accounts, records and ledgers of every kind and description of Debtor pertaining to the Collateral.

4.3   <u>Payment of Obligations and Preservation of Rights</u>.  Debtor shall pay the Obligations, and all principal, interest, costs, expenses and other sums associated therewith, as and when they become due.  In addition, Debtor shall take all necessary steps to preserve its rights against all parties with respect to all of the Collateral.  In the event Debtor fails to take any action required or which Secured Party reasonably deems advisable to protect, maintain or preserve the Collateral, or Secured Party's security interest therein, Secured Party may, but shall not be obligated to, advance funds or take action to accomplish the same.  Any such advances, including, without limitation, reasonable attorney fees and costs incurred by Secured Party, shall be part of the Obligations and shall be immediately payable with

3

interest thereon from the date advanced by Secured Party at the default rate of interest set forth in the Note.

4.4    Payment of Taxes and Assessments. Debtor shall pay or deposit promptly when due all sales, use, excise, personal property, income, withholding, franchise and other taxes, assessments and governmental charges upon or relating to Debtor's ownership or use of any of the Collateral, and shall, upon demand by Secured Party, submit to Secured Party evidence satisfactory to Secured Party that such payments or deposits have been made.

4.5    Further Assurances. Debtor shall at any time and from time to time upon request of Secured Party, execute and deliver to Secured Party, in form and substance satisfactory to Secured Party, such documents as Secured Party shall deem necessary to perfect or maintain perfected the security interest of Secured Party in the Collateral, or which may be necessary to comply with the provisions of the law of the State of Utah or the law of any other jurisdiction in which Debtor may then be conducting Debtor's business or in which any of the Collateral may be located.

4.6    Licenses and Permits. Debtor shall keep in effect all licenses, permits and copyrights required by law or contract relating to Debtor's business and the Collateral, and shall pay when due all fees and other charges pertaining thereto.

4.7    Indemnification. Debtor assumes all responsibility and liability arising from the operation of its business, and Debtor hereby indemnifies and holds Secured Party harmless from and against any claim, suit, loss, damage or expense (including reasonable attorneys' fees) arising out of Debtor's operations of its business.

4.8    Notices. Debtor shall advise Secured Party promptly, in reasonable detail of: (a) any lien or claim made or asserted against the Collateral; and (b) the occurrence of any other event which would have a material adverse effect on the value of any of the Collateral or on the security interests created hereunder.

4.9    Financial Information. Debtor shall provide to Secured Party weekly statements of receipts for that week, payables for that week and statements of cash flow in form and substance reasonably acceptable to Secured Party and its financial advisors. Debtor shall also provide to Secured Party, upon request, such other financial information requested by Secured Party.

4.10    Prohibited Payments/Acts. Debtor shall not, until the Obligations are satisfied in full, without Secured Party's prior written consent, (i) prepay any rent or other sums do to its vendors and suppliers, (ii) make any distributions to Debtor's owners, (iii) make any payments to third parties, except for payables incurred in the ordinary course of Debtor's business, (iv) incur any indebtedness, except for trade payables incurred in the ordinary course of Debtor's business, (v) may any other payments to any other person except in the ordinary course of Debtor's business, or (vi) hire any employees or contractors or raise the salary of Debtor's two employee owners.

4.11    Notices and Information. Debtor shall provide notice to Secured Party of any meeting of the owners or managers of Debtor and shall generally provide Secured Party with any and all information given to the owners and managers of Debtor. Secured Party shall have full and complete access to any information concerning Debtor to the same extent as Debtor's owners have.

ARTICLE V
EVENTS OF DEFAULT AND REMEDIES

4

5.1     Events of Default. The occurrence and continuance of any of the following shall constitute an Event of Default under this Agreement:

(a)     The occurrence and continuance of a default, as defined in any of the Loan Documents.

(b)     Except in the ordinary course of business, any material deterioration or impairment of any of the Collateral or any material decline or depreciation in the market value thereof (other than such deterioration, impairment, decline or depreciation as is caused by normal use or the passage of time) which, in the reasonable judgment of Secured Party, causes the value or character of the Collateral to become substantially insufficient as security for the Obligations.

(c)     The transfer by Debtor of any interest in the Collateral without the prior written consent of Secured Party, except in the ordinary course of business.

(d)     The taking of possession of any substantial part of the property of Debtor at the instance of any governmental authority.

(e)     Any warranty, representation or statement made by Debtor in this Agreement or made or furnished to Secured Party by or on behalf of Debtor in connection with this Agreement proves to be or to have been false in any material respect when made or furnished.

(f)     The breach by Debtor of any covenant made by Debtor in this Agreement.

5.2     Remedies. In the event that any Event of Default shall occur and continue after any required notice and lapse of any applicable grace period, all of the obligations of Secured Party under this Agreement and the Note shall cease and terminate, and Secured Party, shall have the following remedies:

(a)     Secured Party may declare the Obligations immediately due and payable, without further notice, protest, presentment or demand, all of which are hereby expressly waived by Debtor.

(b)     If an Event of Default shall occur and be continuing, all payments received by Debtor under or in connection with the operation of the Collateral shall be held by Debtor in trust for Secured Party, shall be segregated from other funds of Debtor and shall forthwith upon receipt by Debtor, be turned over to Secured Party, in the same form as received by Debtor (duly indorsed by Debtor to Secured Party, if required), and any and all such payments so received by Secured Party (whether from Debtor or otherwise) shall be applied in whole or in part by Secured Party against all or any part of the Obligations in such order as Secured Party shall elect. Any balance of such payments held by Secured Party and remaining after payment in full of all the Obligations shall be paid over to Debtor or to whomsoever may be lawfully entitled to receive the same.

(c)     If any Event of Default shall occur and be continuing, Secured Party may exercise in addition to all other rights and remedies granted to it in this Agreement and in any other instrument or agreement securing, evidencing or relating to the Obligations, all rights and remedies of a secured party under the Uniform Commercial Code. Debtor shall remain liable for any deficiency if the proceeds of any sale or disposition of the Collateral are insufficient to pay

5

all amounts to which Secured Party is entitled. Debtor shall also be liable for the reasonable fees of any attorneys employed by Secured Party to collect any such deficiency and also as to any reasonable attorneys' fees incurred by Secured Party with respect to the collection of any of the Obligations and the enforcement of any of Secured Party's rights hereunder.

     5.3   Termination. Upon payment and satisfaction in full of the Obligations, Secured Party shall, at Debtor's expense, release the security interest in the Collateral granted hereunder and execute and deliver such instruments and other documents and take such further actions as may be necessary to carry out such release.

ARTICLE VI
MISCELLANEOUS

     6.1   Condition. This Agreement and the parties' obligations hereunder are specifically conditioned on the approval of this Agreement and the Note and the transactions contemplated hereunder and under the Note by the Court in the Bankruptcy Proceeding. If the Court does not approve the Note and this Agreement, then this Agreement shall, if executed, be terminated and of no further force and effect and neither party shall have any obligations to any other party in connection with this Agreement.

     6.2   Amendments. Neither this Agreement nor any provisions hereof may be changed, waived, discharged or terminated orally and may only be modified or amended by an instrument in writing, signed by Secured Party and Debtor.

     6.3   Binding Effect. This Agreement shall be binding upon Debtor and Debtor's successors and assigns. This Agreement shall inure to the benefit of Secured Party, and Secured Party's successors and assigns.

     6.4   Waivers. The failure at any time or times hereafter by Secured Party to require strict performance by Debtor of any of the undertakings, agreements or covenants contained in this Agreement or the Note shall not waive, affect or diminish any right of Secured Party hereunder to demand strict compliance and performance therewith. Any waiver by Secured Party of any Event of Default under this Agreement, including any default under the Note, shall not waive or affect any other Event of Default hereunder, whether such Event of Default is prior or subsequent thereto and whether of the same or a different type. None of the undertakings, agreements or covenants of Debtor under this Agreement shall be deemed to have been waived by Secured Party, unless such waiver is evidenced by an instrument in writing signed by an authorized officer or official of Secured Party and directed to Debtor specifying such waiver.

     6.5   Indemnification. Debtor shall indemnify and hold Secured Party harmless from and against any and all liabilities, losses, costs, damages or expenses which might be incurred pursuant to or because of the Collateral or by reason of this Agreement and from any and all claims whatsoever (other than Secured Party's own negligence or willful misconduct) which may be asserted against Secured Party by reason of any alleged obligations or undertakings of Secured Party to perform or discharge any of the terms, covenants or agreements contained in this Agreement. Should Secured Party incur any such liability pursuant to or because of the Collateral or under or by reason of this Agreement or in defense of any such claims or demands, the amounts thereof, including costs, expenses and reasonable attorney fees, shall be secured hereby and Debtor shall reimburse Secured Party therefor immediately upon demand.

6.6     Severability.  If any term or provision of this Agreement shall, to any extent, be determined by a court of competent jurisdiction to be void, voidable or unenforceable, such void, voidable or unenforceable term or provision shall not affect any other term or provision of this Agreement.

6.7     Actions.  Secured Party shall have the right, but not the obligation, to commence, appear in and defend any action or proceeding which might affect Secured Party's security, rights, duties or liabilities relating to the Collateral or this Agreement.

6.8     Interpretation.  Whenever the context shall require, the plural shall include the singular, the whole shall include any part thereof, and any gender shall include both other genders.  The article and section headings contained in this Agreement are for purposes of reference only and shall not limit, expand or otherwise affect the construction of any provisions hereof.

6.9     Notices.  Except as otherwise provided in this Agreement or in the Note, whenever Secured Party or Debtor desire to give or serve any notice, demand, request or other communication with respect to this Agreement or the Note, each such notice shall be in writing and shall be effective only if the notice is delivered by personal service, by nationally-recognized overnight courier, or by mail, postage prepaid, addressed as follows:

| | |
|---|---|
| If to Secured Party, to: | Lowell Peterson<br>5643 N. Elkridge Trail<br>Eden, Utah 84310<br>      And<br>Ray Bowden<br>1630 N. Orchard Way<br>Morgan, Utah 84850 |
| Copy to: | Melven E. Smith<br>Smith Knowles, P.C.<br>4723 Harrison Blvd. #200<br>Ogden, Utah 84403 |
| If to Debtor, to: | Wolf Creek Water Conservancy, Inc.<br>      And<br>Wolf Creek Water Company, Inc.<br>3923 N. Wolf Creek Dr.<br>P.O. Box 658<br>Eden, Utah 84310<br>Attn: Rob Thomas |
| Copy to: | Miller Guymon, P.C.<br>Attn: Blake Miller<br>165 Regent Street<br>Salt Lake City, Utah 84111 |

Any notice delivered personally or by courier shall be deemed to have been given when delivered.  Any notice sent by mail shall be presumed to have been received five (5) business days after deposit in the United States mail, with postage prepaid and properly addressed.  Any party may change its address by giving notice to the other party of its new address in the manner provided above.

6.10    Governing Law.   This Agreement and all matters relating hereto shall be governed by, construed and interpreted in accordance with the laws of the State of Utah.

6.11    Counterparts.   This Agreement may be executed in any number of counterparts, each of which when so executed and delivered, shall be deemed an original, but all such counterparts taken together shall constitute only one instrument.

6.12    Termination.   This Agreement shall terminate upon the full and complete performance and satisfaction by Debtor of all of the Obligations.

DATED effective as of the date first above written.

DEBTOR:                                SECURED PARTY:

Wolf Creek Water Company, Inc.

By: _____            _____
Its: _____           Lowell Peterson

                                       KBC Leasing, LLC

Wolf Creek Water Conservancy, Inc.

By: _____
Its: _____           By:_____
                                       Its:_____

## EXHIBIT A
(List of furniture fixtures and equipment – by individual Debtor)

WOLF CREEK WATER COMPANY, INC

*PRV's*

> Highlands (1)
> Lower System (2)

*Pumping Equipment*

> Warm Springs Well House/Pump Communication
> Eden Hills Well House/Pumps
> Spring Collection Box and Meter

*Metering Equipment*

> Touch Pad/Radio Read

*Miscellaneous*

> Fire Hydrants 9120)
> 8" Main Line (DIP) 385.000'

WOLF CREEK WATER CONSERVANCY, INC.

*Distribution Lines*

> 5,000' 14" from Diversion to Primary Pond at $18.50/ft
> 18,500' of 6" Main Line at $12/ft
> 5,000' of 8" Main Line at $14.50/ft
> 1,275' of 12" Main Line at $16.50/ft

*PRVs*

> PRV (2)

*Gate Valves*

> 6" Gate Valves (37)
> 8" Gate Valves (7)
> 2" Gate Valves (27)

*Misc*

> Lift Stations (3)
> Meters (950)

9

# PROMISSORY NOTE

**$350,000.00**                                                     October ____, 2010

### ** Secured by Security Agreement and Deed of Trust**

FOR A LOAN RECEIVED, Wolf Creek Properties, LC, a Utah limited liability company ("**Borrower**"), promises and agrees to pay to Lowell Peterson and KBC Leasing, LLC (collectively, "**Lender**"), or order, the principal sum of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), in lawful money of the United States of America, together with interest as provided herein.

**1. Interest/Origination Fee.** Interest will be charged on the principal balance of this Note at the rate of **eighteen percent (18%) per annum**, for the period commencing on the date Lender disburses the loan funds to Borrower pursuant to this Note (the "**Effective Date**") and ending on the "Maturity Date" (defined below). Lender shall pay Borrower an origination fee of FOURTEEN THOUSAND DOLLARS ($14,000.00) on the Effective Date.

**2. Payment of Principal and Interest, and Maturity Date.** No payments shall be due prior to the Maturity Date. On the Maturity Date, all of the outstanding principal and accrued interest shall be due and payable. The Maturity Date shall be the earlier of the following three dates:

    a.    The last closing date for the sales, if any, of all or substantially all of the assets of Wolf Creek Water Company, Inc. and Wolf Creek Water Conservancy, Inc.;

    b.    The date stated in the Borrower's Confirmed Plan of Reorganization for this Note to be repaid; or

    c.    The date that is the six (6) month anniversary of the Effective Date.

If the assets of either Wolf Creek Water Company, Inc. or Wolf Creek Water Conservancy, Inc. (collectively, the "**Water Companies**" or individually, a "**Water Company**") are sold, but not the other, then only fifty percent (50%) of the amount then due under this Note shall be due and payable at the closing at the first of either such sale. Said payment shall be applied first to all accrued but unpaid interest, and the remainder to the outstanding principal balance. Thereafter, interest shall continue to accrue at 18% per annum on the remaining principal balance. If Borrower then sells all of its interest in the remaining Water Company, and the closing of said sale shall is prior to events 2.b. or 2.c. above, said closing shall be the Maturity Date.

Any payments made under this Note shall be allocated between the individuals comprising the Lender pro rata in accordance with the amount advanced by such individual lender to fund the loan, but the Lender parties shall be responsible to make such allocation and Borrower shall be responsible to remit payments jointly to both Lenders in accordance with paragraph 4 below.

Any sums not paid on the Maturity Date shall bear interest at the rate of twenty one percent (21%) per annum until paid.

**3. Secured Note; Additional Advances.** In addition to the protections given to the Lender under this Note, Borrower's obligations shall be secured by a (i) Security Agreement dated the Effective Date

1

between Wolf Creek Water Company, Inc., a Utah corporation, and Wolf Creek Water Conservancy, Inc., a Utah non profit corporation, jointly and severally as the debtor, and Lender, as the secured party granting security party a junior priority security interest in the collateral described therein (the "**Security Agreement**"); and (ii) Deed of Trust ("**Deed of Trust**") granting lender a second position security interest in certain real property of Borrower located in Weber County, Utah  Reference is made to such Security Agreement and Deed of Trust for further rights of acceleration of the indebtedness evidenced by this Note, and for further obligations as to payments of taxes and insurance and other obligations.  In addition to any other remedy which may be provided in said Security Agreement or Deed of Trust, the Lender may add to the principal balance of this Note any sums advanced by Lender for the payment of taxes, insurance or other obligations required to be paid by Borrower of the debtor pursuant to the terms of said Security Agreement or Deed of Trust.  Any sums paid shall be added to principal and will bear interest at the Interest Rate. Borrower shall provide Lender with a Lender's policy of title insurance.

4. **Place of Payments**.  All payments to be made by Borrower hereunder shall be delivered to Lender at such address as Lender provides in writing.

5. **Default and Acceleration.**   After satisfying the notice requirements set forth in paragraph 6 below, the Lender, by written notice to Borrower, may declare the entire unpaid principal balance with all accrued interest, late charges and other obligations under this Note immediately due and payable, in the event of any one of the following circumstances, each of which is an event of default hereunder:

      a.     If Borrower does not pay any sum due under this Note on the date it is due, or if Borrower or any debtor fails to comply with any other obligation of this Note or the Security Agreement or Deed of Trust executed in connection with this Note;

      b.     In the event that all or any portion of the property securing this Note is sold (by contract or otherwise) or conveyed without payment to the Lender of the full amount owed under this Note;

      c.     In the event there is any change in the majority ownership or control of Borrower's stock or membership interests, as applicable;

      d.     On the occurrence of any event which gives the Lender, as the secured party under the Security Agreement or Deed of Trust, the right to accelerate the indebtedness secured thereby;

      e.     Borrower breaks any promise Borrower has made to Lender or Borrower or any debtor fails to perform promptly at the time and in the manner provided in this Note or the Security Agreement or Deed of Trust; or,

      f.     Any creditor levies, attaches or executes upon any of Borrower's property on or in which Lender has a lien or security interest, and such levy, attachment or execution is not released within thirty (30) days.

6. **Notice and Opportunity to Cure**.  If an event of default under paragraph 5 above has occurred, the Lender shall not accelerate the entire principal balance owed hereunder or otherwise enforce any remedies under this Note or the Security Agreement or Deed of Trust unless the Lender first gives written notice of the default to Borrower or the debtor under the Security Agreement or Deed of Trust, as the case may be, and Borrower, or the debtor, as the case may be, fails to cure the default as follows: (i) within ten (10) days after receipt of the notice for any default relating to nonpayment of money owed hereunder; or (ii) within thirty (30) days after receipt of the notice for all nonmonetary defaults.

7. <u>No Waiver by Lender.</u> Even if, at a time Borrower is in default, the Lender does not require Borrower to pay immediately in full as described above, the Lender will still have the right to do so if Borrower is in default at a later time.

8. <u>Payment of Lender's Costs and Expenses.</u> The Lender will have the right to collect from Borrower all costs and expenses incurred by Lender to enforce this Note to the extent not prohibited by applicable law. Those expenses include, for example, but are not limited to, reasonable attorneys' fees including attorneys' fees incurred in any appeal and in any proceeding peculiar to federal bankruptcy law.

9. <u>Giving of Notices.</u> Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Mailing Address below or at a different address if Borrower gives the Lender a notice of a different address. Any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address provided in paragraph 4 above, or at a different address if Borrower is given a written notice of that different address.

10. <u>Waivers.</u> Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

11. <u>Commercial Purpose.</u> Borrower represents and warrants to Lender that the loan proceeds disbursed by Lender under the Note shall be used for business, commercial or investment purposes only. Borrower further represents and warrants to Lender that the indebtedness evidenced by this Note is not a consumer loan and the loan proceeds disbursed under this Note shall not be used for personal, family or household purposes. Borrower acknowledges that, but for these representations and warranties, Lender would not grant the loan to Borrower on the terms represented in the Note and the Security Agreement and Deed of Trust. Borrower further acknowledges that Lender is relying exclusively on Borrower's representation and warranties hereunder in Lender's determination of the use of loan proceeds, and will make disbursements under the Note in material reliance on such representations and warranties.

12. <u>Governing Law.</u> This Note shall be governed by, and construed in accordance with, Utah law. If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. The Lender may choose to make this refund by reducing the principal Borrower owes under this Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment.

13. <u>Payment of Attorney Fees.</u> Borrower hereby agrees to pay Lender's attorney's fees incurred in connection with the transactions described in the Loan Documents up to a maximum of $2,500.00.

14. <u>Authority to Sign.</u> Each person signing this Note on behalf of Borrower represents and warrants that he has full authority to do so and that this Note binds the Borrower.

15. <u>Bankruptcy Court Approval.</u> Borrower is a debtor in possession in that certain bankruptcy case pending in the United States Bankruptcy Court for the District of Utah, case number 10-27816. As such, this Note is not binding upon Borrower until the aforementioned Bankruptcy Court has entered an order permitting Borrower to enter into and effectuate this Note. Any actions by Borrower or Lender to contrary are void and of no force or effect. By signing this Note, Lender consents to the personal and

subject matter jurisdiction of the United States Bankruptcy Court for the District of Utah to resolve any disputes arising from or related to this Note, and specifically waives any trial by jury.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

**"BORROWER"**

WOLF CREEK PROPERTIES, LC, a Utah limited liability company

By: _____

Its: _____

Borrower's Address:

Wolf Creek Properties, LC
3923 N. Wolf Creek Dr.
P.O. Box 658
Eden, Utah 84310

**"LENDER"**

_____
Lowell Peterson

KBC LEASING, LLC, a Utah limited liability company

By: _____

Its: _____

4

WHEN RECORDED, MAIL TO:

Blake Miller, Esq.
Miller Guymon, P.C.
165 Regent Street
Salt Lake City, Utah 84111

## DEED OF TRUST

THIS DEED OF TRUST ("**Trust Deed**") is made as of October __, 2010, between WOLF CREEK PROPERTIES, LC, a Utah limited liability company, whose address is 3923 N. Wolf Creek Dr, Eden, Utah 84310 ("**Trustor**"), in favor of Lincoln Title Insurance Agency, 4723 Harrison Boulevard, Ogden, Utah  84403 ("**Trustee**"), for the benefit of Lowell Peterson and KBC Leasing, LLC, whose addresses are provided in paragraph 7 below (collectively, "**Beneficiary**").

FOR GOOD AND VALUABLE CONSIDERATION, including the indebtedness herein recited and the trust herein created, the receipt of which is hereby acknowledged, Trustor hereby irrevocably conveys and warrants to Trustee, in trust, with power of sale, for the benefit and security of Beneficiary, Trustor's interest in and to the real property, situated in Weber County, Utah, described on Exhibit "A" hereto (the "**Property**").   Portions of the Property are encumbered by prior recorded Deed of Trust dated May 24, 2010 with Toby Macfarlane as the beneficiary, and so the security interest granted in the Property hereby is a second position security interest and subject to such prior Deed of Trust.

TOGETHER WITH all buildings, fixtures and improvements thereon and all water rights, rights of way, easements, rents, issues, profits, income, and appurtenances thereunto belonging, now or hereafter used or enjoyed with the Property, or any part thereof, subject, however, to the right, power and authority hereinafter given to Beneficiary to collect and apply such rents, issues and profits.  The entire estate, Property and interest hereby conveyed to Trustee may hereinafter be referred to collectively as the "**Trust Estate**."

This Trust Deed is given for the purpose of securing: (1) payment of the indebtedness and satisfaction of the other obligations set forth in that certain Note dated October __, 2010, from Trustor, payable to Beneficiary, in the original principal sum of $350,000; and (2) the performance of each agreement and covenant of Trustor herein contained.

Trustee, upon presentation to it of an affidavit signed by Beneficiary, setting forth facts showing a default by Trustor under this Trust Deed, is authorized to accept as true and conclusive all facts and statements in such affidavit, and to act upon such affidavit hereunder.

1

TO PROTECT THE SECURITY OF THIS TRUST DEED, TRUSTOR COVENANTS AND AGREES:

    1.    <u>Maintenance: Repair and Construction</u>.  To keep the Trust Estate in good condition and repair.

    2.    <u>Time of the Essence: Default: Acceleration</u>.  Time is of the essence hereof.  Upon default by Trustor as defined in Paragraph 6, the full amount of the Note shall immediately become due and payable, and the power of sale herein conferred may be exercised in accordance with Utah Code Ann. § 57-1-1 et seq.

    3.    <u>Successor Trustee</u>.  Beneficiary may appoint a successor trustee at any time by filing for record in the office of the County Recorder of each county in which the Property or some part thereof is situated, a substitution of trustee. From the time the substitution is filed for record, the new trustee shall succeed to all the powers, duties, authority and title of the trustee named herein or of any successor trustee.

    4.    <u>Successors and Assigns</u>.  This Trust Deed shall apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term "Beneficiary" shall mean the owner and holder, including any pledgee or assignee of the Note. In this Trust Deed, whenever the context requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

    5.    <u>Acceptance of Trust</u>.  Trustee accepts this trust when this Trust Deed, duly executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of a pending sale under any other Trust Deed or of any action or proceeding in which Trustor, Beneficiary, or Trustee shall be a party, unless brought by Trustee.

    6.    <u>Default</u>.  The failure by Trustor to observe and perform any term, covenant or condition to be observed or performed by Trustor contained in this Deed of Trust or the Note shall constitute a default.

    7.    <u>Notice</u>.  If an Event of Default shall occur, Beneficiary shall give written notice of such occurrence to Trustor as provided in the Note, along with the opportunity to cure such default(s) in accordance with the notice and cure provisions of the Note. Whenever Beneficiary or Trustor desire to give or serve any notice, demand, request or other communication with respect to this Deed of Trust, each such notice shall be in writing and shall be effective only if the notice is delivered by personal service, by nationally-recognized overnight courier, or by mail, postage prepaid, addressed as follows:

          If to Trustor, to:        Wolf Creek Properties, LC
                                    3923 N. Wolf Creek Dr.

P.O. Box 658
Eden, Utah 84310

Copy to:                Blake Miller, Esq.
                        Miller Guymon, P.C.
                        165 Regent Street
                        Salt Lake City, Utah 84111

If to Beneficiary, to:  Lowell Peterson
                        5643 N. Elkridge Trail
                        Eden, Utah 84310
                        And
                        Ray Bowden
                        1630 N. Orchard Way
                        Morgan, Utah 84850

Copy to:                Melven E. Smith
                        Smith Knowles, P.C.
                        4723 Harrison Blvd. #200
                        Ogden, Utah 84403

Any notice delivered personally or by courier shall be deemed to have been given when delivered. Any notice sent by mail shall be presumed to have been received five (5) business days after deposit in the United States mail, with postage prepaid and properly addressed. Any party may change its address by giving notice to the other party of its new address.

8.    Severability.  If any provision of this Deed of Trust is held to be or shall, in fact, be illegal or unenforceable, the same shall not affect any other provision or provisions contained in this Deed of Trust or render the same invalid or unenforceable to any extent whatsoever.

9.    Amendments, Changes and Modifications.  This Deed of Trust may not be amended, modified, or terminated without the prior written consent of both Beneficiary and Trustor.

10.    Governing Law.  This Deed of Trust shall be governed exclusively by and construed in accordance with the applicable laws of the State of Utah, without giving effect to principles of conflicts of laws.

11.    Interpretation.  Whenever the context shall require, the plural shall include the singular, the whole shall include any part thereof, and any gender shall include both other

3

genders.  The article and section headings contained in this Deed of Trust are for purposes of reference only and shall not limit, expand or otherwise affect the construction of any provisions hereof.

12.    Binding Effect.  This Deed of Trust shall be binding upon shall inure to the benefit of the respective successors and assigns of Beneficiary and Trustor.

13.    Waivers.  Beneficiary's failure at any time or times hereafter to require strict performance by Trustor of any of the undertakings, agreements or covenants contained in this Deed of Trust shall not waive, affect or diminish any right of Beneficiary hereunder to demand strict compliance and performance therewith.  Any waiver by Beneficiary of any Event of Default under this Deed of Trust shall not waive or affect any other Event of Default hereunder, whether such Event of Default is prior or subsequent thereto and whether of the same or a different type.  None of the undertakings, agreements or covenants of Trustor under this Deed of Trust shall be deemed to have been waived by Beneficiary, unless such waiver is evidenced by an instrument in writing signed by an officer of Beneficiary and directed to Trustor specifying such waiver.

**TRUSTOR:**

Wolf Creek Properties, LC, a Utah limited
liability company

By: _____
Its: _____

STATE OF UTAH                    )
                                 : ss.
COUNTY OF WEBER                  )

The foregoing instrument was acknowledged before me this __ day of October 2010, by _____ the _____ of Wolf Creek Properties, LC.

NOTARY PUBLIC

_____

My commission expires:

_____

4

EXHIBIT A