Michael R. Johnson (7070)
Brent D. Wride (5163)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
E-mail:  mjohnson@rqn.com
         bwride@rqn.com

*Counsel for the Unsecured Creditors Committee*

_____

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| In re: <br><br> WOLF CREEK PROPERTIES, LC, <br><br><br> Debtor-in-Possession. | **Bankruptcy Case No 10-27816** <br> Chapter 11 <br><br> Honorable Joel T. Marker <br><br> [Filed Electronically] |
|---|---|

**OBJECTION OF THE UNSECURED CREDITORS COMMITTEE TO THE
ADEQUACY OF THE DEBTOR'S DISCLOSURE STATEMENT**
_____

Pursuant to 11 U.S.C. § 1125(b), the Official Committee (the "**Committee**") of the

Unsecured Creditors of Wolf Creek Properties, LC (the "**Debtor**"), hereby objects to the

adequacy of the disclosure statement filed by the Debtor in this case.

## INTRODUCTION

On October 7, 2010, the Debtor filed a plan of reorganization (the "**Plan**") (Docket No. 103) and a related disclosure statement (the "**Disclosure Statement**") (Docket No. 104). However, the Debtor has failed to provide sufficient information necessary to evaluate the Plan and to determine whether reorganization of the Debtor would be more advantageous to creditors than liquidation under Chapter 7.

## DISCLOSURE STANDARD

The acceptance or rejection of a proposed plan may not be solicited after the commencement of a case until there has been a disclosure statement, approved by the Court, disclosing "adequate information." 11 U.S.C. § 1125(b). Adequate information means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a reasonable hypothetical investor to make an informed judgment about the proposed plan. 11 U.S.C. § 1125(a).

Simply stated, the purpose of the disclosure statement is to "give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan," Duff v. U.S. Trustee, 198 B.R. 567, 571 (9th Cir. BAP 1996), so that creditors can understand "the probable financial results of the acceptance or rejection of" the plan. In re Aspen Limousine Servs., 193 B.R. 325, 334 (D. Colo. 1996). While adequate information is a flexible concept, at a minimum a disclosure statement must provide information about the plan, how the provisions of the plan will be put into effect, and an explanation of why the proposed

means of implementation will be adequate to the task.  In re Michelson, 141 B.R. 715, 718-19 (Bankr. E.D. Cal. 1992).

The standard in this judicial district for determining adequate information in a disclosure statement was established in In re Jeppson, 66 B.R. 269 (Bankr. D. Utah 1986), wherein this Court stated:

> Generally, the disclosure statement should set forth "all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan." Information often required to be disclosed includes:
>
> 1. The circumstances that gave rise to the filing of the bankruptcy petition.
> 2. A complete description of the available assets and their value.
> 3. The anticipated future of the debtor.
> 4. The source of the information provided in the disclosure statement.
> 5. A disclaimer.
> 6. The condition and performance of the debtor while in Chapter 11.
> 7. Information on claims against the estate.
> 8. The estimated return the creditors would receive under Chapter 7.
> 9. The accounting and valuation methods used in the disclosure statement.
> 10. Information regarding the future management of the debtor.
> 11. A summary of the plan of reorganization.
> 12. An estimate of all administrative expenses, including attorneys' fees and accountants' fees.
> 13. The collectability of any accounts receivable.
> 14. Any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the Plan.
> 15. Information relevant to the risks being taken by the creditors and interest holders.
> 16. The actual or projected value that can be obtained from voidable transfers.
> 17. The existence, likelihood and possible success of nonbankruptcy litigation.
> 18. Any tax consequence of the plan.

19. The relationship of the debtor with affiliates.

Id. at 292 (citation omitted).

As set forth below, the Disclosure Statement filed by the Debtor fails to comply with these requirements. As such, it should not be approved as drafted, and instead should be amended.

## OBJECTIONS AND INADEQUACIES

### I. THE DISCLOSURE STATEMENT DOES NOT PROVIDE ADEQUATE INFORMATION REGARDING THE VALUE OF THE DEBTOR'S REAL PROPERTY.

It appears to the Committee that the principal asset of the Debtor consists of its real property assets. In its schedules, which were filed on June 30, 2010, the Debtor indicated that the value of its real property is $81,176,103. The Debtor indicated that the total amount of secured claims was only a quarter of that amount ($18,676,623.12). In the Disclosure Statement, however, these numbers are dramatically different, and no explanation is given by the Debtor for these marked inconsistencies.

Indeed, the Disclosure Statement indicates that secured claims now total $73,211,471.85, which is four times higher than the amount listed in the schedules. [See Docket No. 104 at 25] At the same time the Disclosure Statement now indicates that the value of the Debtor's real property is only $6,425,000. [Id. at Exhibit C] The Disclosure Statement does not provide any information regarding how this number was calculated. This new amount is a scarce 8% of the value listed in the Debtor's schedules. No information is provided regarding the 92% drop in the

4

value of the Debtor's real property. And no information is provided about why what once represented as a solvent estate has now become an insolvent estate.

Two weeks after filing its Disclosure Statement, the Debtor filed amended schedules. Curiously, the amended schedules indicate—just as the schedules did in June—that the value of the Debtor's real property is $81,176,103. No explanation is provided in the Disclosure Statement regarding the discrepancy. The total amount of secured claims listed in the amended schedules is slightly higher than the amount listed in the original schedules. (The number goes up from $18,676,623.12 to $19,922,251.44.)[1] However, the total amount of secured claims listed in the amended schedules is still only a quarter of the value of the Debtor's real property. The Court should not approve the Disclosure Statement until this major discrepancy is explained. Moreover, the Debtor should not only explain what the true amount of its assets and liabilities is, but also explain in detail how it arrived at those numbers. Cf. Hansen, Jones & Leta, P.C. v. Segal, 220 B.R. 434, 473 (D. Utah 1998) (finding that disclosure statement which failed to discuss substantial events in the case, disclose wrongdoing by insiders, or contain a meaningful liquidation analysis was "neither helpful nor complete").

As stated above, the purpose of a disclosure statement is to provide enough information to enable a reasonable hypothetical investor to make an informed judgment about the proposed plan. The Committee does not believe that any investor could make an informed decision about the Plan without a better understanding of the true value of the Debtor's assets and how the

---

[1] No explanation is provided as to why the amount of secured claims increased. However, the Committee is concerned about discrepancies related to this issue. By way of example, and without suggesting that this is the only discrepancy, the Committee notes that the claim of Capon Capital Property referenced in Exhibit C to the Disclosure Statement appears to have increased from $650,000 to $700,000.

5

Debtor's values were calculated. Accurate information about the value of the real estate and the total amount of secured claims is essential to allow unsecured creditors to fairly evaluate the return that they would receive under Chapter 7. Indeed, if the true numbers are the numbers contained in either the original or amended schedules, the Committee believes that any Plan which fails to pay unsecured creditors in full with interest is objectionable on a number of grounds, including of course the best interests of creditors test.[2] The current proposed Plan, of course, does not do that. Instead, it proposes to pay unsecured creditors, over time, 66.67% of their allowed claims.

II.     **THE DISCLOSURE STATEMENT DOES NOT PROVIDE SUFFICIENT INFORMATION TO ALLOW AN INVESTOR TO MAKE AN INFORMED DECISION ABOUT WHETHER CONTINUED OPERATION OF THE DEBTOR'S RESORT IS ADVISABLE.**

The Debtor wishes to sell its water companies and use the cash generated from that sale to operate for a year or so to see if conditions improve and the Debtor can then sell its properties at a greater price. The Committee does not believe that the Disclosure Statement provides enough information to allow a hypothetical investor to make an informed judgment about whether this approach is advisable, particularly given the contradictory information set forth in the Disclosure Statement as compared to the schedules.

According to the projections in the Disclosure Statement, the Debtor will lose money on its operations during all of 2011. [See Docket No. 104 at Exhibit B.] In February 2011, for example, the Debtor projects it will lose $150,000 on its operations. This pattern will continue in successive months. The Debtor expects to receive $1,500,000 from the sale of its water

---

[2] Under the Plan certain secured creditors may receive deeds in lieu of foreclosure. Without knowing the true value of the real estate, the Committee cannot determine whether this is in the best interests of unsecured creditors.

companies within the next few weeks. [Id.] However, this money will be quickly eaten up by operating losses while the Debtor waits to see if conditions will improve for the sale of the resort. The Committee believes that the Debtor is basically proposing to have the unsecured creditors pay the cost of operating for another year and then liquidating anyway, with no assurance as to why that approach, as compared to an immediate liquidation now, makes any sense.

In order to fairly evaluate the proposed Plan, a hypothetical creditor would need to have much more information about why the Debtor believes that conditions will improve sufficiently to justify the losses that the Debtor will experience while waiting for a brighter future. The Disclosure Statement is completely deficient in this regard. It does not reveal the current value of the resort as a going concern, it does not indicate what efforts the Debtor has made to sell the resort, and it does not provide any information as to why the Debtor believes that the resort will be worth more in a year than it is now. It also does not provide any detail about the proposed terms of sale. How will the Debtor sell its property and for what price? Who will it use to sell the property?

The Disclosure Statement needs to provide "[a]ny financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the Plan." In re Jeppson, 66 B.R. 269 (Bankr. D. Utah 1986). It also needs to identify the source of the information provided in the Disclosure Statement and the accounting and valuation methods used in the Disclosure Statement. Id. However, the Disclosure Statement does none of these things. With respect to the information most important to a hypothetical investor, the Disclosure provides a very general single-page document entitled "Projected Financial

7

Information," and a cursory single-page document entitled "Liquidation Analysis." These two documents provide only vague and unsupported estimates of a very general character. No information is provided as to the source of the information or the accounting and valuation methods used. Indeed, it appears to the Committee that the numbers used in the two pages of financial information may be nothing more than hopeful estimates. Surely the Debtor has much more detailed information that could be provided, and this information is needed so that creditors who vote on the Plan can make informed decisions.

**III.     THE DISCLOSURE STATEMENT DOES NOT PROVIDE INFORMATION REGARDING THE VALUES, IF ANY, OF VOIDABLE TRANSFERS.**

The Disclosure Statement also does not provide information regarding the values, if any, of voidable transfers that may have been made to the Debtor's insiders or to other parties. This information is required by In re Jeppson, and the Court should not approve the Disclosure Statement until it is provided. Moreover, while the Disclosure Statement says that the Debtor shall retain the right to pursue avoidance actions, it does not say whether or not the Debtor intends to do so. The Disclosure Statement should provide that information.

**IV.     THE DISCLOSURE STATEMENT SHOULD DISCLOSE THAT THE PLAN VIOLATES THE ABSOLUTE PRIORITY RULE.**

The proposed Plan, as drafted, proposes to pay unsecured creditors less than in full with interest, while allowing equity holders to either retain their interests in the Debtor (if a funding event occurs) or obtain payment from the Liquidation Trust (if a funding event does not occur). In other words, the proposed Plan violates the absolute priority rule. The Debtors should be

8

required to disclose that fact to creditors (the Disclosure Statement references the absolute priority rule on page 57, but does not say that the Plan violates the rule).

V. **THE DISCLOSURE STATEMENT NEEDS TO PROVIDE MORE DETAIL ON THE "DEBTOR'S EFFORTS TO OBTAIN FUNDING OR EQUITY INVESTMENTS SUFFICIENT TO ALLOW THE RESORT TO CONTINUE."**

On page 44 of the Disclosure Statement, the Debtor indicates that, after the Effective Date, "the Reorganized Debtor will continue the Debtor's efforts to obtain funding or equity investments sufficient to allow the Resort to continue. Should such funding or investments not be obtained by 12 months after the Effective Date, the Reorganized Debtor will commence a structured liquidation" of its assets.

Much more disclosure needs to be provided regarding the details of the proposed funding/equity investments the Debtor is speaking about. For example, what amount of funding or investment will allow the Debtor to continue and not liquidate after the year period referenced? Is it enough funding/investment to pay creditors in full, or some lesser amount? What specific parameters will apply to the funding/investment? Will the Debtor use brokers or other professionals? If so, what will be the terms of their engagements? Who will monitor the Debtor's performance and requirements with the Plan?

Also, both the Disclosure Statement and the proposed Plan repeatedly use the phrase "Funding Event," but there does not appear to be an actual definition in either the Disclosure Statement or the proposed Plan of what this phrase actually means. The Disclosure Statement and proposed Plan should be amended accordingly.

9

## VI. DEFAULT PROVISIONS AND ROLE OF THE COMMITTEE POST-CONFIRMATION.

The Disclosure Statement is silent about the role of the Committee post-confirmation. If the Committee will cease to exist, this should be explained. If the Committee will continue to function, that should be explained as well, including any limitations on the Committee's authority.

Further, neither the Disclosure Statement nor the proposed Plan appear to have any provisions relating to defaults under the Plan and, indeed, the Plan does not even give the Court jurisdiction to deal with those issues. Paragraph 13.1 deals with post-confirmation jurisdiction of the Court, and it does not give the Court authority to hear and decide any claimed defaults under the Plan. Rather, the Court's role is limited to making rulings only if the Confirmation Order is "stayed, revoked, modified or vacated." The Court's jurisdiction should be expanded, and both the Disclosure Statement and the proposed Plan should set forth the procedures that will be followed to address disputes and alleged defaults under the proposed Plan. The Disclosure Statement and proposed Plan should be amended accordingly.

## VII. THE COURT SHOULD CONTINUE THE DISCLOSURE STATEMENT HEARING FOR 30 DAYS, AND REQUIRE SUBMISSION OF A REDLINE SUFFICIENTLY IN ADVANCE OF THE HEARING.

It is the plan proponent's burden to show adequate disclosure over an objecting creditor. In re Sunshine Precious Metals, Inc., 142 B.R. 918, 920 (Bankr. D. Idaho 1992). Given the numerous disclosure problems noted herein, the Committee believes the hearing on the Disclosure Statement should be continued for approximately 30 days, and that the Debtor should be required to make the amendments noted above and any other amendments or modifications

required by the Court. Further, the Committee believes that the Debtor should be required to file a redline of its amended Disclosure Statement with the Court no later than 15 days prior to the continued hearing date, and that it should be required to serve its redline on the Committee, the US Trustee and any other party who objected to the initial Disclosure Statement. Finally, the Committee believes that all "service parties" to the redlined Disclosure Statement should then be given until 5 days prior to the continued hearing date to file any objections they may have to the amended Disclosure Statement. See, e.g., In re Sunflower Racing, Inc., 218 B.R. 972, 977 (D. Kan. 1998) (holding that "a bankruptcy court has the authority pursuant to section 105 to defer hearings on a creditor's disclosure statement or on other important matters," and that a bankruptcy court should do so if "necessary to keep the process fair, fast, effective and efficient").

**VIII. FULL RESERVATION OF RIGHTS REGARDING CONFIRMATION ISSUES.**

The objections herein address only the adequacy of the Debtor's Disclosure Statement. The Committee reserves all rights as to confirmation issues, including, without limitation, feasibility, good faith, improper plan provisions, absolute priority rule issues, best interests of creditors, and all other confirmation requirements.

### CONCLUSION

For the foregoing reasons, the Committee respectfully requests that the Court deny approval of the Debtor's proposed Disclosure Statement unless it is amended to provide the information requested herein.

DATED this 15th day of November, 2010.

                                          RAY QUINNEY & NEBEKER P.C.

                                          /s/Brent D. Wride
                                        Brent D. Wride
                                        *Attorneys for the Unsecured Creditors Committee*

1112328

12

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of November, 2010, the foregoing was electronically filed and therefore served via ECF on the following:

- Gregory J. Adams    gadams@mbt-law.com
- James W. Anderson    anderson@mmglegal.com
- Kenneth L. Cannon    kcannon@djplaw.com, khughes@djplaw.com
- T. Edward Cundick    tec@princeyeates.com, christy@princeyeates.com;docket@princeyeates.com
- Kenyon D. Dove    kdove@smithknowles.com, dcouch@smithknowles.com
- Thomas J. Erbin    tje@princeyeates.com
- Mark R. Gaylord    gaylord@ballardspahr.com, goodalem@ballardspahr.com;saltlakedocketclerk@ballardspahr.com
- Danny C. Kelly    dckelly@stoel.com, docketclerk@stoel.com
- Peter J. Kuhn tr    Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov
- Blake D. Miller    miller@mmglegal.com
- Matthew L. Moncur    moncurm@ballardspahr.com, goodalem@ballardspahr.com;saltlakedocketclerk@ballardspahr.com
- Bentley R. Peay    brpeay@stoel.com
- Robert S. Prince    rprince@kmclaw.com, squilter@kmclaw.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Kim R. Wilson    bankruptcy_krw@scmlaw.com

I further certify that on the 15th day of November, 2010, a true and correct copy of the foregoing was served upon the following parties via first class mail, postage prepaid.

Laurie A. Cayton
Peter J. Kuhn
U.S. Trustees Office
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT 84111

Cushman & Wakefield of Colorado, Inc.
1675 W. Redstone Center Dr., Suite 225
Park City, UT 84098

Daniel M. Eliades
Forman Holt & Eliades LLC
80 Route 4 East--Suite 290
Paramus, NJ 07652

Jeffrey M. Heilbrun
P.O. Box 10305
Jackson, WY 83002

Read R. Hellewell
1800 Eagle Gate
60 East South Temple
Salt Lake City, UT 84111

Parr Brown Gee & Loveless
185 South State Street #800
Salt Lake City, UT  84111


/s/Alexis Gruninger

1112328