Mark R. Gaylord, Esq. (#5073)
Matthew L. Moncur, Esq. (#9894)
BALLARD SPAHR, LLP
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, Utah 84111-2221
Telephone:  (801) 531-3000
Facsimile:  (801) 531-3001
gaylord@ballardspahr.com
moncurm@ballardspahr.com

Attorneys for America First Federal Credit Union

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **In re:**<br><br>**WOLF CREEK PROPERTIES, LC**<br><br>**Debtor.** | **Bankruptcy Case No. 10-27816- JTM**<br>**Chapter 11** |

**AMERICA FIRST FEDERAL CREDIT UNION'S**
**OBJECTION TO DISCLOSURE STATEMENT**

Creditor America First Federal Credit Union ("America First") hereby objects to the Disclosure Statement for Debtor's Plan of Reorganization (the "Disclosure Statement") filed by debtor Wolf Creek Properties, LC ("Debtor") on October 7, 2010.  The Disclosure Statement should be rejected because it (1) fails to provide adequate information and (2) describes a plan that is unconfirmable on its face.

The Disclosure Statement fails to provide adequate information so as to allow an informed judgment about the plan and should therefore be rejected.  11 U.S.C. 1125(b) provides

in relevant part, "an acceptance or rejection of a plan may not be solicited, unless . . . there is transmitted to such holder the plan, or a summary of the plan, and a written disclosure statement approved after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). Pursuant to section 1125(a), "adequate information means information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical investor . . . to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).

Debtor's Disclosure Statement fails in two respects to provide adequate information as required by § 1125(b). First, the disclosure statement does not adequately describe the collateral securing the debts of secured creditors, including America First. The Disclosure Statement identifies America First's collateral as the "Northwest Parcel" and the "Mountain Property." It does not, however, define those terms. Although those terms are defined in Debtor's proposed plan of reorganization, those definitions simply refer to exhibits A-1-A-4 to the plan, which "will be distributed prior to circulation" but have yet to be distributed. Accordingly, America First has no real sense as to what Debtors' intentions are with respect to its collateral. In addition, the Disclosure Statement defines various portions of collateral for America First and other creditors, but does not provide any information as to the values of those parcels. Given that the plan contemplates forcing America First to accept a deed in lieu of foreclosure "in full satisfaction" of its claim of *only* the portion of its collateral designated as the "Northwest Parcel" if no funding event occurs within 12 months, the failure of the Disclosure Statement to specifically identify the collateral to be conveyed and describe how those terms are defined is particularly troubling to America First and renders America First unable to fully assess Debtor's plan.

Second, the Disclosure Statement fails to provide adequate information because it is internally inconsistent.  In describing the plan treatment of America First,  the Disclosure Statement specifically states that "[a]ll pre-petition liens securing the Claims of this Class shall be preserved, having the same rights and priorities accorded to such liens as of the Petition Date." (Disclosure Statement, 30.)  The Disclosure Statement goes on, however, to state that if no funding event occurs within twelve months of the effective date of the plan, "America First will receive a deed in lieu of the Northwest Parcel in full satisfaction of its claim." (Disclosure Statement, 31.)  America First's bargained-for collateral is therefore not preserved in the plan as described.  Rather, the plan contemplates forcing America First to accept only a deed in lieu of foreclosure only a portion of its collateral.  Thus, America First's bargained-for lien position is not preserved, and is indeed threatened, by Debtor's proposed plan as described.  In the event that the value of the portion of America First's collateral designated as the "Northwest Parcel" is of insufficient value to repay America First's claim, according to the disclosure statement, America First would be left without further recourse and its debt would be deemed "paid in full" notwithstanding any remaining deficiency.  Thus, the Disclosure Statement's claim that America First's lien position would be preserved is inconsistent with the remainder of the plan.

The Disclosure Statement must also be rejected because the plan described therein is unconfirmable on its face.  *In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) (where a disclosure statement describes an unconfirmable plan, the court should exercise its discretion to consider the adequacy of the disclosures because "undertaking the burden and expense of plan distribution and vote solicitation is unwise and inappropriate if the proposed plan could never legally be confirmed.")  Again, the plan described contemplates forcing America

First to accept a deed in lieu on only a portion of its collateral if Debtor cannot obtain funding adequate to fully repay America First within twelve months of the effective date.

A plan is only confirmable if it "does not discriminate unfairly, and is fair and equitable" with respect to each impaired class.  11 U.S.C. § 1129(b)(1).  "To the extent a debtor seeks to alter the collateral securing a creditor's loan, providing the 'indubitable equivalent' requires that the substitute collateral not increase the creditor's risk exposure." *Arnold & Baker Farms v. United States of America*, 85 F.3d 1415, 1422 (9th Cir. 1996); *see also In Re Monarch Beach*, 166 Bankr. 428, 436 (C.D. Cal. 1993) (a plan is not fair and equitable if it unfairly shifts the risk of plan failure to creditor).  "Evidence of the requisite indubitable equivalent is present if, under the treatment proposed in the Plan, there is no reasonable doubt that [the creditor] will receive the full value of what it bargained for when it made its contract with Debtor." *F.H. Partners, L.P. v. Investment Co. of the Southwest, Inc.*, 341 B.R. 298, 319 (10th Cir. BAP 2006).

In this case, from the very face of the plan, it is apparent that the plan does not contemplate providing America First with the full value of what it bargained for.  America First bargained for a first lien secured position on its loan that included both the ski hill and significant additional collateral.  The plan as described contemplates forcing America First to accept only a portion of its bargained-for collateral in full satisfaction of its debt, leaving America First with no further recourse.  America First therefore is forced to accept the risk that the inadequately described "Northwest Parcel" will be insufficient in value to satisfy its debt.  In that event, America First would be forced to locate a buyer for the property willing to pay a purchase price sufficient to repay AFCU—something that Debtor has, itself, been unable to do.  This substantially increases America First's risk, is patently unfair, and renders the plan

unconfirmable on its face. In addition, this aspect of the plan is troubling because it gives Debtor a tremendous disincentive to locate an investor and obtain funds necessary to repay America First.

Finally, America First notes that in a case such as this one, impairment of America First's bargained-for interest rate is inappropriate and inequitable. § 506(b) of the code provides that:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges **provided for under the agreement under which such claim arose.**

11 U.S.C. § 506(b). Based on this provision, "when an oversecured creditor's claim arises from a contract, the contract provides the rate of post-petition interest." *Matter of Laymon*, 958 F.2d 72, 75 (5th Cir. 1992).

In this case, Debtor's plan contemplates reducing the post-petition interest rate on America First's claim to the "Plan Interst," defined as the London Interbank Offered Rate (LIBOR) plus four percent. (Debtor's Plan of Reorganization, 13.) This is contrary to § 506(b) and patently inequitable. America First bargained for a default interest rate of 18%. Debtor was in default at the time of its petition. Debtor also claims that the value of America First's collateral exceeds its debt. Courts have recognized that in situations such as this, a secured creditor in America First's position is entitled to the full value of its claim, including post-petition default interest. As another Court in this circuit has held:

> Pre and post-default interest rates are simply matters of pricing. The money costs more if not repaid when agreed. Had Congress wished to distinguish between the treatment of pre and post-default interest by section 506(b), it could easily enough have said so.

*In re K & J Properties, Inc.*, 338 B.R. 450, 458 (Bankr.D.Colo.2005) (allowing 36% default interest rate).  Because the Debtor's plan contemplates reducing the bargained-for interest rates of secured creditors it claims are oversecured, it is unconfirmable on its face and the Disclosure Statement should be rejected.

America First, based on the foregoing, asks that the Disclosure Statement be rejected. America First further joins in and adopts as its own sections I, II, III, V, and VII of the Objection of the Unsecured Creditors Committee to the Adequacy of the Debtor's Disclosure Statement, filed on November 15, 2010 (Docket No. 136).  America First further reserves the right to raise additional objections, to join in the objections of any other creditors, and reserves all objections that it has or may have with respect to plan confirmation.

DATED this 15th day of November 2010.

/s/ Matthew L. Moncur
Mark R. Gaylord, Esq.
Matthew L. Moncur, Esq.
BALLARD SPAHR LLP
Attorneys for America First Federal Credit Union

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct of copy of the foregoing **AMERICA FIRST FEDERAL CREDIT UNION'S OBJECTION TO DISCLOSURE STATEMENT** was served to the following this 15th day of November 2010, in the manner set forth below:

[ ] Hand Delivery

[X] U.S. Mail, postage prepaid

[ ] Electronic notice

[ ] Federal Express

[ ] Certified Mail, Receipt No. _____, return receipt requested

| | |
|---|---|
| Blake D. Miller, Esq. | Laurie A. Cayton |
| James W. Anderson, Esq. | U.S. Trustees Office |
| MILLER GUYMON, P.C. | KEN GARFF BLDG. |
| 165 Regent Street | 405 South Main Street, Suite 300 |
| Salt Lake City, UT 8411 | Salt Lake City, UT 84111 |

/s/ Matthew L. Moncur